## 41573. BERRY v. THE STATE.
(326 SE2d 748)

HILL, Chief Justice.

Anthony Undra Berry was convicted of murder, criminal attempt to commit robbery, and theft by taking, and was sentenced to life imprisonment on the murder charge with ten-year sentences on each of the other two charges. He appeals.[1]

On Sunday, November 13, 1983, some hunters discovered the body of 79-year-old Ray Floyd in the Apalachee River. An investigation of the area revealed the presence of drag marks on the bank of the river, and an autopsy indicated several of the victim's ribs had been broken, probably from falling on his side, before he died by drowning.

---

[1] The crime was committed on November 13, 1983. The Barrow County jury returned its verdict of guilty on February 21, 1984. There was no motion for new trial, but a motion for out of time appeal was granted. Notice of appeal was filed on August 17, and the transcript of evidence was filed on August 30, 1984. The record and transcript were docketed in this court on September 21, briefs were filed, and the case was submitted for decision without oral argument on November 11, 1984.

The victim's red and white pickup truck was found about 3½ miles away, wrecked in a ditch. An eleven-year-old boy testified that the truck had passed by him at a high rate of speed that Sunday afternoon and that the defendant, Tony Berry, had been driving. Another witness, who had investigated the wrecked truck to see if anyone was injured, saw a young black man run around the nearby community recreation building and disappear into the woods beyond.

The victim's wife stated that her husband had left home about 3:00 that Sunday afternoon and that he always carried his wallet, in which she estimated he had $200 to $250 that day, in the front flap of his bib overalls. When his body was pulled from the river, the pocket flap was open and the wallet was missing. Papers known to be carried by the victim in his wallet were found on the front seat of his wrecked truck, while others were found in the wooded area nearby. The wallet itself, as well as the keys to the truck, were never recovered.

A friend of the defendant testified that he drove the defendant to Monroe later that evening, and described the defendant as having been shaky and nervous and acting paranoid.

When he heard the police were looking for him, the defendant had his father pick him up and bring him back. After his arrest, the defendant was taken to the jail, where his *Miranda* (*v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)) rights were read to him; he then made a statement in which he admitted only that he took the victim's truck and wrecked it. After further investigation a second statement was obtained.

At the trial the defendant testified during a *Jackson v. Denno* (378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)) hearing that after receiving his *Miranda* warnings, he had asked for an attorney, but was told that if he had not done anything, he would not need one.[2] In his first statement, he stated that he had seen the victim down by the river about 4 p.m., and that he walked on and saw the victim's truck, which had the keys in it. He got in the truck and drove about 3 miles, but was going too fast, lost control and ran into the ditch. He then got out and walked home, before getting a ride with a friend to Monroe where he spent the night.[3]

The day after he made this first statement, the defendant testi-

---

[2] The defendant's testimony that he asked for an attorney is followed immediately by his testimony that he asked if he could have a lawyer present when he took a polygraph test (see Tr. 136-137).

[3] On redirect examination, the officer was asked if the defendant ever asked for a lawyer. He responded as follows: "There was something mentioned about taking a polygraph, and he asked if when he went to take a polygraph if he could have an attorney go with him. I advised him that he could have an attorney at any time he saw fit, that I advised him of that earlier. He stated if he went to take a polygraph exam that he wanted to have an attorney with him, not during this interview."

fied that the officers came back and told him what to say, and, because he feared them, he said he had struggled with the victim and knocked him over the head, but that was not true. Otherwise, the details of his second statement were true. He did not ask for an attorney at this time. In his second statement, he recounted that the victim had picked him up to ride around with him. (They had known each other a long time and were friends. The defendant had worked with the victim doing odd jobs.) They went to the river, and the defendant decided to take the victim's wallet; while they were struggling the victim fell and hit his head on a rock. He did not know if he was dead, but he dragged him into the river, getting wet himself up to the waist. He said he never did get the wallet, but jumped into the truck and drove away, then turned to come back but lost control of the truck. He jumped out and ran away even though someone hollered for him to stop, went home and changed his wet clothes, and rode with his friend to Monroe.

At trial the defendant stated that after riding around and going down by the river to drink, he and the victim decided to get more liquor, that he reached toward the victim for the money, but the victim fell and appeared unconscious. He dragged him to the river to wash the blood off of him, got nervous, and left him on the bank, mostly out of the water, and jumped in the truck to go for help. After he wrecked the truck, he was again frightened and ran into the woods, went home and changed his clothes, and went to Monroe. He denied intending to hurt the victim or to steal the truck or ever seeing the wallet.

The jury found him guilty of murder, criminal attempt to commit robbery (the victim's wallet), and theft by taking (the truck).

1. The defendant challenges the use of his custodial statements at trial. At the *Jackson v. Denno* hearing conducted by the trial court, the defendant admitted that prior to both statements he had been informed of his rights, that he understood them, and that he signed a written waiver form. He also stated that during his first statement he had requested an attorney; the police officers, however, testified that the defendant only requested that an attorney be present if he took a polygraph test. Defendant also asserts that his second statement was given involuntarily out of his fear of the officers. The trial court found that the defendant's statements were given freely and voluntarily.

We deal with the second statement first. Despite defendant's assertion that he was forced to say that he struggled with the victim and struck him over the head, the trial court found that this statement was "freely and voluntarily given without the slightest hope of benefit or the remotest fear of injury." It is clear that the trial court accepted the officer's testimony that he did nothing to force the defendant to make this statement and that the trial court did not be-

lieve the defendant's testimony that he was forced to say it.

Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal. *Crawford v. State*, 245 Ga. 89 (2) (263 SE2d 131) (1980); *Gates v. State*, 244 Ga. 587, 590-591 (261 SE2d 349) (1979) cert. den. 445 U. S. 938 (1980). Thus, we find no error in the admission of defendant's second statement, unless he had previously made a request that an attorney be present during the first interrogation. We therefore turn to defendant's first statement.

Although it is clear that when an accused invokes his right to have counsel present during interrogation, all further interrogation must cease, *Smith v. Illinois*, 53 USLW 3430, 3431 (1984),[4] it also appears that where that request is for a specific purpose other than interrogation, such as to have an attorney at trial, and does not encompass a "desire to deal with the police only through counsel," *Edwards v. Arizona*, 451 U. S. 477, 484-85 (101 SC 1880, 68 LE2d 378) (1981), interrogation may continue. *Ross v. State*, 254 Ga. 22 (3) (326 SE2d 194) (1985); *Collins v. Francis*, 728 F2d 1322, 1331-34 (11th Cir. 1984); *Jordan v. Watkins*, 681 F2d 1067, 1070-74 (5th Cir. 1982). The same would be true here. However, although the defendant's first statement was ruled admissible, the trial court did not expressly find that the defendant's request for an attorney was unambiguously limited to the taking of a polygraph examination and did not encompass the custodial interrogation.[5]

Upon remand, the trial court is directed to enter its findings, after further hearing if need be, as to the purpose for which the defendant requested counsel. If the trial court determines that the defendant's request was only that counsel be afforded him if a polygraph test were administered, the conviction will stand affirmed, subject to defendant's right to appeal that determination. If the trial court determines that defendant requested that counsel be present during interrogation (or simply requested counsel), the defendant shall be granted a new trial at which his statements shall not be admissible in evidence.[6]

---

[4] The fact that the defendant later gave a statement to police cannot be used as evidence that he did not request counsel. See *Smith v. Illinois*, supra.

[5] It should be noted that defense counsel made no objection to the admission of defendant's statements on the ground that the defendant had requested that an attorney be present during interrogation.

[6] The Criminal Benchbook, Georgia Superior Courts, p. 93 (1981), recommends that trial judges expressly find by a preponderance of the evidence that the defendant was advised of each of his *Miranda* rights and that his statement was made freely and voluntarily. We would prefer more complete findings of fact, if the evidence warrants them, substantially as follows: I find from a preponderance of the evidence that the defendant was advised of each of his *Miranda* rights, that he understood them, that he voluntarily waived them, and that he thereafter gave his statement freely and voluntarily without any hope of benefit or fear of

2. Defendant complains of hearsay testimony admitted over his objection. He objects to the testimony by the investigating officer that the officer talked to the defendant's grandmother, with whom the defendant lived, who said that the defendant had come home about 5:00 that Sunday afternoon all wet. She also told the officer that the defendant had told his father something about Floyd's death. The officer then asked the defendant's father what the defendant had said, and the officer testified that the defendant's father had told him that he pushed the victim and he had fallen and then he had pulled him into the river.

The trial court admitted the evidence, over objection, with instructions to the jury that both statements were offered, not for their truth or falsity, but to explain why the officer went back to the defendant to obtain a second statement.

In *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982), this court said: "To prevent an overly broad interpretation of Code § 38-302 [now OCGA § 24-3-2], we adopt the following: When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. Green, Ga. Law of Evidence, § 300 (1957); *Brewer v. Henson*, 96 Ga. App. 501, 502 (100 SE2d 661) (1957). But where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc., on which he or she acted shall not be admissible under Code § 38-302."

Applying this principle to the case before us, it is clear that the conduct and motives of the officer in getting a second statement from the defendant were not relevant to the issues to be decided by the jury.[7] Therefore, the admission of these statements for this reason was error under *Momon*, supra.

The state urges, nevertheless, that the admission of the statements was harmless. As to the statement by the grandmother, we agree; she had previously testified to substantially the same information. See *Mincey v. State*, 251 Ga. 255, 266 (304 SE2d 882) (1983). But, as to the father's statement, we cannot agree on the record before us.

---

injury. (If the defendant denies having been advised of any one of his *Miranda* rights or says that he requested an attorney, specific findings as to the point in controversy should also be made.)

[7] Differences between the interrogating officer's testimony and the defendant's testimony do not "open the door" for the officer to explain his conduct and motives by testifying as to what other people he interviewed told him.

The defendant's father was at the trial and presumably available to be called as a witness but he was not. Instead the officer testified to a statement he said the father told him the defendant made, clearly inadmissible hearsay. That statement, that the defendant pushed Floyd, who fell, and then dragged him into the river, went to the very heart of the defendant's defense; it was in fact virtually the same information defendant denied from his second statement.

If, upon remand, it is determined that defendant's statements were admissible (see Division 1), the officer's testimony as to the father's statement would be harmless due to its inclusion in defendant's second statement. If, however, it is determined on remand that defendant's statements were inadmissible, the officer's hearsay testimony would not be harmless and should be excluded upon retrial.

3. The trial court did not err in refusing to direct a verdict in favor of the defendant on the charge of robbing the victim of his wallet. OCGA § 16-8-40. There was evidence tending to show the victim kept his wallet in his overalls' pocket, that that pocket was open, and that papers he kept in his wallet were found in the front seat of the victim's truck and in the woods near the wrecked vehicle. This circumstantial evidence, along with the defendant's testimony that he was reaching for the victim's money when the victim fell, is sufficient to create a jury issue (see also the defendant's second statement). *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436) (1984); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. We need not here reach the issue, raised for the first time on appeal, of the failure of one of the jurors to acknowledge that he allegedly had known the defendant for many years. Moreover, this information must have been equally well known to the defendant.

*Judgment affirmed on condition and with direction. All the Justices concur, except Marshall, P. J., who concurs in the judgment only.*

DECIDED MARCH 14, 1985.

*William T. Winder,* for appellant.
Anthony U. Berry, *pro se.*
*Timothy G. Madison, District Attorney, T. David Motes, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis,* for appellee.