### 71841. COLEMAN v. THE STATE.
(348 SE2d 70)

McMURRAY, Presiding Judge.

The defendant was convicted of the offense of aggravated battery upon his wife, Joyce Buckson (the victim). The evidence adduced at trial revealed the following: During the afternoon of September 6, 1984, the defendant and his wife experienced a series of violent domestic quarrels. Later that evening, the defendant returned home with a handgun and shot his wife in the face, in the shoulder and in the chest. As a result of the shooting, the victim lost her right eye, suffered permanent facial scarring, sustained a fractured rib, a collapsed lung, and continues to suffer from numbness on the right side of her body.

At trial, the victim described the following events surrounding the shooting: "[H]e came in through the garage into the kitchen . . . [a]nd he said, 'Joyce, I'm tired of you. I'm gonna kill you.' The mo-

ment he said that, he shot me . . . somewhere in my face. . . . I turned and he shot me again . . . and he said, 'Joyce, didn't I tell you I was gonna kill you?' And then that's when I felt the gun in my side and he shot me again. At that time, I said, 'Oh, my God! What in the world? What is he trying to do?' . . . [T]hen I turned and I went back into the den, and I just sat down and I dropped my head. And immediately when I did that, he got on the phone. The only thing I heard was 'wife' and 'shot' and I just blanked out . . . [W]hen I woke up, I was in the ambulance."

The defendant testified that the victim assaulted him with a knife and then he shot her in self-defense. The jury rejected this explanation and found the defendant guilty of the offense of aggravated battery as charged. The trial court denied the defendant's motion for new trial and this appeal followed. *Held*:

1. In his first enumeration of error, the defendant contends that the trial court erred in allowing Detective Thomas Gill of the Hinesville Police Department to testify as an expert in the field of crime scene investigation and reconstruction. "Whether or not a witness is allowed to testify as an expert is a question for the sound discretion of the trial court and such discretion, unless abused, will not be disturbed. *Rouse v. Fussell*, 106 Ga. App. 259 (4) (126 SE2d 830). Generally nothing more is required to entitle one to give testimony as an expert than that he has been educated in the particular trade or profession; and special knowledge involving a particular subject may be derived from experience as well as study and mental application. *Carter v. Marble Products, Inc.*, 179 Ga. 122 (1) (175 SE 480); *Frazier v. State*, 138 Ga. App. 640, 645 (227 SE2d 284)." *Dennis v. State*, 158 Ga. App. 142, 143 (3) (279 SE2d 275).

In the case sub judice, the record shows that Detective Gill has had extensive training and experience in criminal investigation and crime-scene reconstruction. Consequently, the trial court did not abuse its discretion in recognizing Detective Gill as an expert.

2. The defendant argues that the trial court erred in permitting Detective Gill to give his opinion, as an expert witness, concerning the location of the victim in the house when she was shot and whether the victim was holding a knife at the time of the shooting. The defendant argues that these conclusions could have been drawn by the jurors without the assistance of expert testimony. See *Williams v. State*, 254 Ga. 508, 510 (2) (330 SE2d 353) and *Fordham v. State*, 254 Ga. 59 (4) (325 SE2d 755). We disagree. Detective Gill drew his conclusion from the location of the bullet slugs found in the house, blood smears and blood stains found on the walls and furnishings of the house and the blood pattern found on the knife with which the victim allegedly attacked the defendant. (Comparing this evidence with the statement given by the defendant and the testimony of the victim,

Detective Gill was able to piece together the sequence of events surrounding the shooting.) Detective Gill's testimony was accompanied by a complex and detailed explanation of how the above-described physical evidence led to his factual conclusions. It is apparent from his explanative testimony that the witness was able to "read" the physical evidence and draw his conclusions only as a result of his experience and training in the field of criminal investigation and crime-scene reconstruction. It is equally apparent that Detective Gill's conclusions, based on the physical evidence presented at trial, were " 'beyond the ken of the average layman.' [*Fordham v. State*, 254 Ga. 59 (4), supra.]" *Williams v. State*, 254 Ga. 508, 510 (2), supra. Contrary to the defendant's argument, absent an explanation of the physical evidence found at the crime scene, the jury would have been faced with translating seemingly meaningless facts into possibly erroneous conclusions, or ignoring the physical evidence altogether. Consequently, we find that the trial court did not err in allowing Detective Gill to testify as to his opinion based on the facts presented at trial. See *Nassar v. State*, 253 Ga. 35 (3) (315 SE2d 903); *Buie v. State*, 254 Ga. 167, 169 (4) (326 SE2d 458). Compare *Williams v. State*, 254 Ga. 508, 510 (2), supra.

3. Next, the defendant contends that Detective Gill improperly based his opinions on evidence and opinions presented by the victim. This argument is without merit. The record shows that Detective Gill properly based his opinion on the physical evidence he observed at the crime scene, statements made by the defendant and the testimony of the victim at trial. See OCGA § 24-9-67. There is nothing in the record to indicate that the basis of the witness' opinion was drawn from conclusions drawn by the victim.

4. In his sixth enumeration of error, the defendant challenges the use of a statement he made while in police custody. The defendant argues that he gave the statement after he had requested an attorney and therefore admission of the statement at trial was a violation of the rule set out in *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378).[1]

At the *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908), hearing conducted by the trial court, the evidence showed that the defendant made two in-custody statements to the police. After

---

[1] In *Edwards* the court held "that 'when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights . . . [A]n accused, . . . having expressed [a] desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication, exchanges or conversations with the police.' " Daniel, Ga. Crim. Trial Prac. (1985 ed.), § 5-18.

the defendant made the first statement, he was asked by the interrogating officer if he would repeat the statement so that it could be tape recorded. The defendant stated "that he did not want to tape his statement until he talked to a lawyer." The interview was immediately terminated and the defendant was taken to a jail cell. The next day the police went to the defendant and advised him of his *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694), rights, offered him an opportunity to call a lawyer and asked if he would answer some questions. The defendant stated that he understood his rights, that he did not want to talk to a lawyer and that he would answer questions about the shooting. From these facts, the trial court questioned whether the defendant had invoked his right to counsel for *all further police interrogation.* In this regard, the trial judge asked the interrogating officer the following questions: "THE COURT: When the defendant first mentioned an attorney, what did he say? A. We were in my office and I brought him in and I sat him down and I asked him if he would be willing to tape record what he told me in the car. And, at that time, the best of my recollection, he said, 'I don't want to tape a statement . . . I don't want to give a tape recorded statement until I talk to a lawyer.' That's . . . and it was clear in my mind at the time that he was specifically talking about a tape recording. THE COURT: Did he mention an attorney to you after that at any time? A. No, sir. He did not. I didn't press the issue with him. I told him that . . . you know, like I said, I believe I told him that arrangements could be made for him to talk to a lawyer. And then the next time I talked to him, in my own mind, it was clear that he was willing to talk to us and, as a matter of fact, he asked what type of questions we were going to ask and we explained to him that we were going to ask primarily questions dealing with the positions of people during the incident. And he understood that and indicated to me that he was willing to talk to us about that. . . . Thomas asked him if he wanted an opportunity to talk to a lawyer at that time, while we were talking to him, and he said he did not." After this testimony, the trial court ruled as follows: "THE COURT: All right. The Court finds that [the statement was] freely and voluntarily made after the *Miranda* warnings were given, and the Court finds that by the defendant stating that he did not want to have his interview taped without an attorney, that such act or such statement by the defendant did not cause him to exercise his right to invoke an attorney or request the assistance of an attorney at that time."

"Although it is clear that when an accused invokes his right to have counsel present during interrogation, all further interrogation must cease, *Smith v. Illinois,* 53 USLW 3430, 3431 (1984), it also appears that where that request is for a specific purpose other than interrogation, such as to have an attorney at trial, and does not encom-

pass a 'desire to deal with the police only through counsel,' *Edwards v. Arizona*, 451 U. S. 477, 484-85 (101 SC 1880, 68 LE2d 378) (1981), interrogation may continue. *Ross v. State*, 254 Ga. 22 (3) (326 SE2d 194) (1985); *Collins v. Francis*, 728 F2d 1322, 1331-34 (11th Cir. 1984); *Jordan v. Watkins*, 681 F2d 1067, 1070-74 (5th Cir. 1982)." *Berry v. State*, 254 Ga. 101, 104 (1) (326 SE2d 748).

In the case sub judice, since the trial court expressly found that the defendant's request for an attorney was "unambiguously limited" to giving a tape recorded statement and did not encompass other custodial interrogation, we find that it was not erroneous to allow the defendant's second statement into evidence. See *Berry v. State*, 254 Ga. 101, 104 (1), supra, where the Supreme Court remanded, directing the trial court to enter findings as to the purpose for which the defendant requested counsel.

5. Defendant contends in his remaining enumeration of error that the trial court erred in failing to give the jury several of his requests to charge. We do not agree. We have reviewed the trial court's jury instructions in their entirety, and we find that the principles of law designated in the defendant's requests to charge were adequately covered in the court's jury instructions. "[T]he failure of the trial judge to give a requested charge in the exact language requested is not grounds for reversal where the charge given substantially covers the same principle. [*Caldwell v. State*, 167 Ga. App. 692, 695 (6) (307 SE2d 511).]" Daniel, Ga. Crim. Trial Prac. (1985 ed.), § 24-1.

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED JUNE 24, 1986 —
REHEARING DENIED JULY 23, 1986 — 

*Richard D. Phillips*, for appellant.
*Dupont K. Cheney, District Attorney, J. Thomas Durden, Jr., Assistant District Attorney*, for appellee.