## 45281. CULBREATH v. THE STATE.
### (369 SE2d 29)

BELL, Justice.

The appellant, Jimmy Culbreath, was convicted of the malice murder of Mary McDaniels, and given a life sentence.[1] Culbreath now appeals. In two of his enumerations of error, Culbreath contends that the evidence of his guilt is insufficient to sustain the conviction, and that his pre-trial custodial statements to the police were involuntary. Culbreath also contends that, during the testimony of a police detective, the detective improperly placed his character in issue. Culbreath's remaining contention is that the trial court erred by refusing to give his requested jury charge on self-defense. We conclude that

---

[1] The crime occurred on March 27, 1987, and Culbreath was indicted for malice murder during the May 1987 term of the DeKalb County Grand Jury. Culbreath was tried on August 6-7, 1987. The jury returned its verdict of guilty on August 7, and the court sentenced Culbreath that same day. Culbreath filed a motion for new trial on August 21. The court reporter certified the transcript on October 20, 1987, and Culbreath's motion was denied on November 2, 1987. The notice of appeal was filed on November 25, and the appeal was docketed in this court on December 10. The appeal was submitted for decision without oral arguments on January 22, 1988.

none of these contentions is meritorious, and affirm.

Culbreath and McDaniels worked together at Hill Manufacturing Co. at the time of the shooting. They also lived together until about three months before the killing, when McDaniels moved into the home of a friend and co-worker, Diane Johnson. McDaniels lived with Johnson for about two months; she then moved in with another co-worker, Silas Smith.

Gerald Wise, Culbreath's and McDaniels' supervisor at Hill Manufacturing, testified that in March 1987 Culbreath and McDaniels began to argue with each other during their breaks. About two weeks before the shooting, Wise noticed that McDaniels had begun to ride home with Silas Smith. Smith and McDaniels would wait to leave until after Culbreath had done so. Wise added that the last week before the shooting Culbreath was moody and angry while at work. Wise told Culbreath that he did not want any trouble at the plant; Culbreath responded that McDaniels was running with the wrong crowd and was heading for trouble. Culbreath said that "you just can't help a woman," and asserted that he had spent money on McDaniels.

Diane Johnson testified that, when McDaniels moved out of Culbreath's house, McDaniels asked Johnson to go with her to Culbreath's house while McDaniels picked up some of her belongings. When McDaniels and Johnson arrived at Culbreath's house, Culbreath was there. He invited Johnson to join McDaniels and Culbreath in the bedroom where McDaniels was gathering her belongings. Culbreath told Johnson that he wanted her to tell McDaniels that he did not have a gun. He opened a drawer in the bedroom and asked her to look inside and tell McDaniels whether a gun was there. Johnson further testified that, after McDaniels moved in with her, Culbreath told Johnson that he did not understand why McDaniels had left him, and that he was not "going to let it go like this."

According to Silas Smith, on the evening of March 27, 1987, he and McDaniels were watching a basketball game in Smith's apartment. McDaniels left the room, saying that she was going down to her car to get some cigarettes. Smith said that soon after she left he heard what sounded like four shots. He went to his balcony, and saw a man he later identified as Culbreath running from the parking lot. Smith ran downstairs and called McDaniels, but she did not respond. He went to the car, where he saw McDaniels slumped over in the passenger seat. Smith ran back upstairs and called the police.

One of Smith's neighbors testified that he heard the four shots and then saw Smith go down the stairs and toward the car. He said that Smith ran back up the stairs in a rush, as if he were upset.

When the police arrived at the scene, they found the victim dead, slumped over in the passenger seat of her car. She had been shot four times, including once in the temple.

After Smith told the police what he had witnessed, the police went to Culbreath's residence and asked him to accompany them to the police station for questioning. He agreed to go. Culbreath subsequently gave the police several statements, all of which were admitted into evidence following a *Jackson-Denno* hearing. In the first statement Culbreath denied that he shot McDaniels. In a second statement, however, he admitted that he shot her, but he did not provide any details of the incident. In still another statement Culbreath said that when he met McDaniels in the parking lot she was armed with a gun. He said that they struggled, that the gun fired once, and that he ran. In Culbreath's final statement he said that McDaniels called him and told him to come by Smith's apartment to pick up some money that she owed him. She met him in the parking lot and told him the money was in her car. He said that she got in the car, opened the glove compartment, and pulled out a gun. They struggled, and the gun fired once, striking McDaniels. He then left the scene. Culbreath testified at trial consistently with his final statement to the police.

1. In his first enumeration of error Culbreath contends that the evidence is insufficient to support the verdict. We disagree. Examining the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Culbreath guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Culbreath's second enumeration of error is that the trial court erred in admitting his statements into evidence, because the statements were not voluntarily made. We disagree. "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal." *Berry v. State*, 254 Ga. 101, 104 (1) (326 SE2d 748) (1985). After examining the transcript of the *Jackson-Denno* hearing, we conclude that the trial court's determination that Culbreath's statements were voluntarily given is not clearly erroneous.

3. In his third enumeration Culbreath contends that a police detective improperly placed his character into issue. During cross-examination of the detective at trial, defense counsel asked the detective whether Culbreath understood his *Miranda* rights. The detective answered that Culbreath did understand them. Defense counsel then asked how the detective knew that Culbreath understood. The detective responded, "[w]ell, I know that he understood it because he had a past." At that point, pursuant to a request by defense counsel, the trial judge removed the jury from the courtroom. After the jury was removed, defense counsel moved for a mistrial. The trial court denied the motion, but instructed the jury to disregard the detective's answer.

Pretermitting the question whether the detective's answer im-

properly placed Culbreath's character in issue, we find that the trial court did not abuse its discretion in refusing to grant a mistrial. The decision to grant or deny a motion for a mistrial is necessarily a matter within the discretion of the trial court, and the court's exercise of that discretion will not be disturbed on appeal unless it is apparent that a mistrial is essential to preserve the defendant's right to a fair trial. *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982).

> Here, the trial judge acted immediately, ruled out the offensive testimony, and properly instructed the jury not to consider the testimony in its deliberations. [Cit.] Under the facts of this case, we cannot say that this amounted to an abuse of discretion.

Id. at 4.

4. At the charge conference, the trial court instructed defense counsel that he had to choose between his requested charges on the defenses of accident and self-defense. Defense counsel, while objecting to that ruling, elected to have the court charge on accident. Culbreath contends, in his fourth enumeration of error, that the trial court erred in refusing to charge on self-defense. We find no error.

The essence of the defense of accident is that the defendant's act was not intentional. The defense of self-defense, on the other hand, admits the intentional commission of the act, but seeks to justify the act based on the legal excuse that the defendant acted from reasonable fear of immediate serious harm. The defenses of accident and self-defense are therefore inconsistent, and a defendant generally is not entitled to a charge on both. *Gladson v. State*, 253 Ga. 489, 491 (1) (322 SE2d 45) (1984); *Boling v. State*, 244 Ga. 825, 829 (9) (262 SE2d 123) (1979); *Fields v. State*, 167 Ga. App. 816, 817-818 (3) (307 SE2d 712) (1983); Kurtz, Criminal Offenses and Defenses in Georgia (2d ed.), pp. 1-3.

Culbreath, both in his pre-trial statements to the police and in his trial testimony, maintained that the gun fired as he struggled with the victim after she removed the gun from the glove compartment. Culbreath did not specifically testify whether the gun discharged accidentally or whether Culbreath somehow, at least momentarily, gained control of the gun and intentionally pulled the trigger as an act of self-defense. However, even assuming that an inference that Culbreath intentionally shot the victim in self-defense can be drawn from Culbreath's testimony of the struggle, we find that the trial court's action was proper.

We reach this conclusion because, under the circumstances of this case, the charges of accident and self-defense are inconsistent; either the defendant gained control of the gun and intentionally pul-

led the trigger, or the gun fired accidentally during the struggle. Because the defenses are inconsistent, Culbreath was not entitled to charges on both, and the court acted within its discretion by compelling defense counsel to elect one of the defenses. *Gladson,* supra, 253 Ga.; *Boling,* supra, 244 Ga.; *Fields,* supra, 167 Ga. App.; Kurtz, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 22, 1988 —
RECONSIDERATION DENIED JULY 6, 1988.

*Carl P. Greenberg,* for appellant.

*Robert E. Wilson, District Attorney, James W. Richter, Assistant District Attorney, Michael J. Bowers, Attorney General, Andrew S. Ree,* for appellee.