### 46269. ROPER v. THE STATE.
(375 SE2d 600)

CLARKE, Presiding Justice.

Robert W. Roper was convicted of murder, armed robbery, kidnapping and robbery by sudden snatching. He received three life sentences on the murder, armed robbery and kidnapping charges and ten years imprisonment on the robbery by sudden snatching charge. He now appeals.[1] Because a confession introduced against him at trial

---

[1] The crimes were committed on June 23, and 25, 1986. The defendant was indicted on

was obtained in violation of the rule of *Edwards v. Arizona,* 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), and *Michigan v. Jackson,* 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986), we reverse in part and affirm in part.

The facts relevant to our decision are as follows: On June 23, 1986, seventeen-year-old Kevin Lamar Jackson drove his blue Honda to a public library to complete his homework assignments. Three days later his body was discovered in the East Park Avenue area of Savannah, Georgia. He had been shot in the head. A few hours following the discovery of the body, Robert Roper and Christopher Burrell were seen in New Jersey in a blue Honda with a Georgia license tag. They were stopped, placed under arrest, and taken to the Franklin Township Police Department where they were confined in separate cells.

Detective Shedden of the Franklin Township Police interrogated Roper three times during his first 21 hours of incarceration. Each time Detective Shedden covered the same ground twice—once off the record and once with a tape recorder running. Each time Roper was advised of his constitutional rights. Each time Roper agreed to make a statement and to sign a waiver of his rights to remain silent and to have an attorney present during questioning.

The first interrogation took place at 11:55 p.m. on June 26. Roper claimed that he, Burrell and Jackson had engaged in a struggle and that he was not sure whether he or Burrell had shot Jackson. He admitted, however, that he had snatched a purse from a woman in a McDonalds restaurant on June 25 to get the money for the trip to New Jersey.

Roper was interrogated again at 11:10 a.m. on June 27. This time he stated that he had shot Jackson in self defense. Again, he admitted to the purse snatching incident.

At about noon on June 27, an investigator for the bail unit visited the jail to determine whether any of the inmates wanted an attorney. Roper filled out and signed a form requesting the assistance of a public defender. Neil Hamilton, a public defender, received the form and appeared in court that afternoon to represent Roper at an extradition hearing. After a brief discussion with Hamilton, Roper waived extradition. Hamilton did not discuss the murder or kidnapping charges with Roper. He met with him only in the courtroom. Before Roper was returned to his cell he gave Roper his "standard speech," advising

July 16, 1986. A Chatham County jury returned a verdict of guilty on September 15, 1987. A motion for new trial was made on October 14, 1987 and was denied on March 7, 1988. A second motion for new trial was filed on June 7, 1988 and denied on June 21, 1988. Notice of appeal was filed on July 19, 1988. The transcript was docketed on October 5, 1988. The case was docketed on October 5, 1988, and was submitted for decision without oral argument on November 18, 1988.

Roper to keep his mouth shut until he arrived in Georgia and could speak to another attorney.

At about 4:00 p.m. on the same day, Detective Ragan from Savannah arrived in New Jersey. He went with Detective Shedden to the county jail where Roper was now being held. At about 9:00 p.m. Roper was again interviewed. This time he admitted that he and Burrell planned to kill Jackson. Roper admitted that he had shot Jackson execution style while Jackson was crying and begging for his life.

At trial Roper moved to suppress the third statement. The trial court denied the motion, finding that Roper made each statement knowingly and voluntarily after being fully informed of his constitutional rights.

1. Roper asserts that the trial court erred in denying his motion to suppress the third confession. We agree. Under the rule of *Edwards v. Arizona*, supra, and *Michigan v. Jackson*, supra, once an accused in custody invokes the right to counsel, he should not be subject to further interrogation by the authorities until counsel is present, unless the accused himself initiates further communication, exchanges or conversations with the police. *Edwards*, 451 U. S. at 484-85. If police initiate questioning after the invocation of the right to counsel, any uncounseled waiver of that right is invalid. *Jackson*, 475 U. S. at 635.

In this case the State concedes that the form that Roper filled out requesting an attorney was a sufficient invocation of the right to counsel.[2] The State also concedes that the interview that resulted in the third confession was police-initiated and took place while Roper had been in continuous police custody. The State argues, however, that the "bright-line" rule of *Edwards* does not apply here because (a) the police officers interrogating Roper did not know that an attorney had been appointed for Roper; (b) Roper invoked the right to counsel only for the limited purpose of representing him at the extradition hearing; and (c) Roper was given an opportunity to consult with counsel prior to the third interview but chose to make a statement in his absence. We will address each argument briefly below.

(a) The state asserts that this case is distinguished from *Edwards* and because the officers interrogating Roper, unlike the police involved in those cases, were unaware that he had invoked his right to counsel. Moreover, when asked whether he was represented by counsel, Roper answered "No."

---

[2] We note that the sixth amendment right to counsel does not depend on a request for counsel. *Brewer v. Williams*, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977). A request for counsel, however, has been deemed "an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation." *Jackson*, 475 U. S. at n.6.

These facts may indicate that the officers were not guilty of any intentional misconduct. However, *"Edwards* focuses on the mind of the suspect and not of the police. . ." *Arizona v. Roberson,* 486 U. S. ___ (108 SC 2093, 100 LE2d 704) (1988). The U. S. Supreme Court imposed upon law enforcement authorities the duty to maintain a procedure to enable an officer who proposes to initiate an interrogation to determine whether a suspect has previously invoked the right to counsel. Id. at ___. Moreover, Sixth Amendment principles require imputation of the State's knowledge from one state actor to another. *Michigan,* 475 U. S. at 634. "One set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court)." Id. The fact that the interrogating officers had no actual knowledge that Roper had made a request for counsel is constitutionally insignificant. *Roberson,* 486 U. S. at ___. Roper's negative answer to the question of whether he had a lawyer did not answer the question of whether he had invoked the right to counsel, nor could it constitute a waiver.

(b) Next, the state contends that Roper's invocation of his right to counsel was a limited invocation of that right, an invocation of the right to have counsel to represent him at formal court proceedings. The state asserts that under *Collins v. Francis,* 728 F2d 1322 (11th Cir. 1984), a limited request for counsel is not sufficient to invoke the *Edwards* rule.

In *Jackson,* 475 U. S. at 633, the state made a similar argument. There the suspect had requested counsel at an arraignment. The state maintained that the suspect may not have intended the request for counsel to encompass representation during further questioning and urged the court not to apply the *Edwards* rule. The court rejected the state's argument stating, "Th[e] settled approach to questions of waiver requires us to give a broad rather than a narrow interpretation to a defendant's right to counsel—we presume that the defendant requests the lawyer's services at every critical stage of the prosecution." 475 U. S. at 633.

A defendant may, by his own language, limit his request for counsel to certain settings. *Connecticut v. Barrett,* 479 U. S. 523 (107 SC 828, 93 LE2d 920) (1987). Here, however, there is no evidence that Roper wished to limit his request for counsel in any way. To the contrary, he filled out a form simply indicating that he was indigent and wanted a lawyer appointed to represent him. Compare *Ross v. State,* 254 Ga. 22 (326 SE2d 194), cert. denied, 472 U. S. 1022 (105 SC 3490) (1985) (defendant expressed desire to be represented by counsel at only committal hearing); *Berry v. State,* 254 Ga. 101 (326 SE2d 748) (1985) (request for counsel to be present only during polygraph testing); *Coleman v. State,* 179 Ga. App. 834 (348 SE2d 70), aff'd in part and reversed in part, 257 Ga. 313 (357 SE2d 566) (1987) (defendant

requested counsel to be present during tape recorded statements). This case is distinguished from *Krier v. State*, 249 Ga. 80 (287 SE2d 531), cert. denied, 457 U. S. 1140 (102 SC 2974) (1982), where an attorney was appointed to represent the accused during an extradition hearing even though the accused had not made a request for counsel that would invoke the *Edwards* rule. Thus, in the absence of any evidence that Roper's request for counsel was limited by its terms, we must presume that he wanted counsel at all critical stages, including custodial interrogation.

(c) The state next argues that there was no violation of Roper's right to counsel because Roper was allowed to consult with an attorney that afternoon. The state asserts that the officers complied with the requirement of *Edwards* that no interrogation take place until counsel "has been made available."

The *Edwards* rule is the corollary to the *Miranda* admonition that "if the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U. S. at 474. The Fifth and Sixth Amendments protect not only the right to consult with an attorney, but also the right to have the attorney present during questioning. See, e.g., *Brewer v. Williams*, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977) (Sixth Amendment violated when police interrogated a suspect while transporting him, even though he had consulted an attorney shortly before entering the car.) *Edwards* concluded that it is inconsistent with *Miranda* to reinterrogate an accused in custody if he has clearly asserted his right to counsel. 451 U. S. at 485. *Edwards* presumes that after an accused invokes the right to counsel, any subsequent waiver made at a police-initiated interrogation and in the absence of counsel is necessarily the "product of the inherently compelling pressures" of custodial interrogation. 384 U. S. at 467. Under the rule enunciated in *Edwards*, reinterrogation without counsel present may occur only if the accused himself initiates further communication, exchanges or conversations with the police. Id. We cannot agree with the state that any opportunity to speak with counsel, no matter how brief, dissolves the *Edwards* presumption. If this were the rule, the police could begin a new round of questioning and attempt to obtain a waiver of the right to counsel each time the attorney leaves. Such a rule would do nothing to safeguard the right of an accused to be free from uncounseled interrogation. In sum, we conclude that the "bright-line" rule of *Edwards* requires that counsel be present during police-initiated interrogations after an accused has invoked the right to counsel.

Thus, we conclude that Roper's waiver of his right to counsel, made at a police-initiated interrogation after he had invoked his right to counsel, was invalid. The admission of the statement that he made during that interrogation was error.

Having found constitutional error, we must next determine whether that error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967). Having reviewed the record thoroughly, we cannot say that the admission of the third confession did not contribute to the jury's verdict of guilty on the murder, kidnapping and armed robbery charges. The information regarding these offenses elicited during the third confession was more consistent with the physical evidence and with logic than was the information held in the first two confessions. Also, it was during this confession that Roper stated that he shot Jackson in the back of the head while Jackson was kneeling and crying. It is also notable that the prosecutor relied heavily on the third confession in making his closing argument to the jury.

On the other hand, the third confession did not contain any new information relating to the purse snatching charge. Roper admitted to all of the pertinent facts of that charge during the first two interrogations. There was also eyewitness testimony regarding his involvement in that crime. Thus, although the introduction of the third statement was not harmless error as to the murder, armed robbery, and kidnapping charges, it was harmless as to the purse snatching charge.

2. In his next enumeration of error, Roper asserts that it was an abuse of discretion to join the trial of the purse snatching charge with the other more serious charges. He contends that it was error to join the trial of offenses that were not based on the same conduct and did not constitute a series of acts connected together. Roper neglects to note, however, that the trial of offenses may be joined when the acts constitute parts of a single scheme or plan. *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975). The state's theory of this case was that Roper and Burrell stole the car, murdered Jackson and snatched the purse, all as part of their plan to go to New Jersey. We find no abuse of discretion in the joinder of the offenses. Moreover, even if it were an abuse of discretion, Roper could not have been prejudiced by the joinder given the overwhelming evidence against him on the purse snatching charge.

3. Roper next asserts that the admission of certain photographs of Jackson's body was error because changes in the condition of the body had taken place due to exposure to the elements. We have held that it is error to admit photographs that portray damage to the victim's body that was not caused by the assailant, *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983); *Heard v. State*, 257 Ga. 1 (354 SE2d 115) (1987). Here, however, the damage inflicted by the elements during the two days prior to the discovery of Jackson's body was minimal. The presence of one fly and many insect bites on the body is not sufficient to divert the jury from their task of sorting out the facts of the case. We find no error in the admission of the photographs.

4. Finally, Roper contends that the admission of certain testimony regarding Jackson's character was error. We find no error. The identity and general background of the victim are relevant issues in a murder trial. *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984). The testimony complained of can be described as "general background" information.

In conclusion, we reverse the conviction on the murder, armed robbery and kidnapping charges. The conviction on the robbery by sudden snatching charge is affirmed.

*Affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 2, 1989 —
RECONSIDERATIONS DENIED FEBRUARY 23, 1989.

*Kenneth Kondritzer*, for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, David T. Lock, Assistant District Attorneys, Michael J. Bowers, Attorney General, Andrew S. Ree*, for appellee.

