A93A2419. HATCHER v. THE STATE.
(441 SE2d 673)

BEASLEY, Presiding Judge.

Following the denial of his motion for new trial, Hatcher appeals his conviction for the burglary of a mobile home, OCGA § 16-7-1 (a).

At issue is the admissibility of his custodial confession, contested on two bases: it was obtained as the result of an illegal warrantless arrest made without probable cause; it was obtained in violation of his Sixth Amendment right to counsel. The latter contention is dispositive.

1. Hatcher, who had a seventh grade education was given the *Miranda* warnings when arrested on March 11. At that time he did not indicate to investigating officer Sanders that he wished an attorney, but in accord with arrest procedure, he was provided with and completed at the jail an "eligibility affidavit form" for appointed counsel. It contained the printed introduction, "THE UNDERSIGNED BEING FIRST DULY SWORN ON OATH, DEPOSES AND SAYS: I am the Defendant in the above-styled action. I CANNOT afford a lawyer to assist me. I DO WANT the Court to provide me with a lawyer. I understand that I am providing this information under oath in order for the Court to determine my eligibility for a court-appointed lawyer to defend me on the above charge(s)."

The custodial interview with investigator Sanders occurred two days later, on March 13. Sanders was generally aware of the booking procedure including the eligibility affidavit but he did not know specifically that Hatcher had completed one. Before the start of the interview, the *Miranda* warnings were read to Hatcher and he signed a written waiver certificate. Four days later, the coordinator of the county indigent defense program determined that Hatcher was not indigent and not eligible for appointed counsel. On May 15, Hatcher executed a second eligibility affidavit and was found to be indigent. Counsel was appointed.

At the conclusion of a pre-trial motions hearing at which the court conducted a *Jackson-Denno* inquiry, the court expressly found, inter alia, "that the act of filling out an eligibility form for the appointment of counsel by someone who is indigent and not known to the interrogating officer is certainly a different situation than a request during an interrogation or interview by a defendant for counsel" and that "the perfunctory act of filling out an affidavit of eligibility in this process did not rise to the grade of request for counsel that would affect in any way the interrogation, since it was not known to the interviewing or interrogating officer."

The initial affidavit contained a clear and unequivocal request for counsel. The State's assertion, that the form was not intended to be such a request but rather designed to address only the question of indigency, mischaracterizes the meaning and purpose of the form. On its face, and as acted upon, the form was created specifically for the purpose of ascertaining indigency of one who wishes legal representation at public expense. If legal representation was not desired and sought, the entire exercise was meaningless. Nor was the request for counsel to represent defendant for a limited purpose; rather, it was "to defend" on the charges brought.

Moreover, "the [S]ixth [A]mendment right to counsel does not depend on a request for counsel. *Brewer v. Williams*, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977). [But it] has been deemed 'an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation.' [Cit.]" *Roper v. State*, 258 Ga. 847, 849 (1), n. 2 (375 SE2d 600) (1989). In *Roper*, prior to his third police-initiated interrogation in the foreign jurisdiction in which he was arrested, the defendant completed and signed a form requesting a public defender's assistance. A public defender appeared in court that afternoon to represent Roper at an extradition hearing. The attorney met with Roper only in the courtroom and advised Roper to "keep his mouth shut" until he returned to Georgia and could speak with other counsel. Later that day, Roper was again interviewed by police and admitted the murder of the victim.

In suppressing this confession, the Supreme Court held that

"once an accused in custody invokes the right to counsel, he should not be subject to further interrogation by the authorities until counsel is present, unless the accused' himself initiates further communication, exchanges or conversations with the police. [Cit.] If police initiate questioning after the invocation of the right to counsel, any uncounseled waiver of that right is invalid. [Cit.]" *Roper* at 849 (1), applying the rules of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), and *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986).

The State's reliance on *Waddell v. State*, 160 Ga. App. 743, 745 (2) (288 SE2d 90) (1981), decided eight years prior to *Roper*, avails it nothing. *Waddell*, supra at 745 (2), notes "a distinction between having counsel appointed or retaining counsel and a defendant specifically asserting his right to have counsel present during interrogation." In *Waddell* there was no indication that the defendant requested counsel prior to his interrogation or oral statement.

The interrogating officer's apparent ignorance of Hatcher's earlier petition for counsel is irrelevant. As stated in *Roper*, supra at 850 (1) (a), " '*Edwards* focuses on the mind of the suspect and not of the police. . . .' [Cit.] The U. S. Supreme Court imposed upon law enforcement authorities the duty to maintain a procedure to enable an officer who proposes to initiate an interrogation to determine whether a suspect has previously invoked the right to counsel. [Cit.] Moreover, Sixth Amendment principles require imputation of the State's knowledge from one state actor to another. [Cit.] 'One set of state actors (the police) may not claim ignorance of [a defendant's] unequivocal request for counsel to another state actor (the court).' [Cit.]" The court in *Roper* regarded the officer's lack of knowledge as "constitutionally insignificant." Id.

Likewise, the fact that counsel had not yet been appointed or indeed ultimately might not have been appointed, did not alter Hatcher's invocation of his Sixth Amendment right to counsel.

The trial court's finding in favor of admissibility of Hatcher's confession, on the basis that Hatcher failed to invoke his federal constitutional right to counsel, was clearly erroneous. See *Baird v. State*, 207 Ga. App. 44, 46 (4) (427 SE2d 37) (1993). Once such constitutional error is found, it must be determined whether the error was harmless beyond a reasonable doubt. *Roper* at 852 (1), citing *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

Defendant Hatcher did not testify, there was no eyewitness identification of any perpetrator but only a viewing of the suspected vehicle used in the burglary, and there was no forensic evidence linking Hatcher personally to the criminal act. The confession was a significant portion of the State's case against him. The error in its admission cannot be considered harmless beyond a reasonable doubt. The

conviction for burglary must be reversed and a new trial granted.

2. It is unnecessary to address the other basis of Hatcher's attack on his confession.

*Judgment reversed. Cooper and Smith, JJ., concur.*

DECIDED JANUARY 27, 1994 —
RECONSIDERATION DENIED FEBRUARY 14, 1994 — 

*Joseph F. Bertollo*, for appellant.

*J. Brown Moseley, District Attorney, Robert R. Auman, Assistant District Attorney*, for appellee.