A97A1370, A97A1371. ANDERSON v. THE STATE (two cases).
(492 SE2d 252)

RUFFIN, Judge.

Alphonzo Anderson was indicted for burglary, rape, two counts of aggravated sodomy, and robbery by sudden snatching. The first four counts related to acts allegedly committed against one victim. The fifth count, robbery by sudden snatching, involved a different victim. A jury found Anderson guilty of robbery by sudden snatching after the trial court severed Count 5 from the remainder of the case. Anderson appeals that conviction in Case No. A97A1371. In a subsequent trial, a jury found Anderson guilty of burglary, rape, and two counts of aggravated sodomy. In Case No. A97A1370, he appeals his convictions on those counts. For reasons which follow, we reverse the judgment in Case No. A97A1370 and affirm the judgment in Case No. A97A1371.

### Case No. A97A1370

In this case, the victim testified that she awoke one night to find Anderson, whom she knew from her neighborhood, pulling her up by the throat. Anderson took her upstairs to a bedroom, removed the bottom portion of her clothing, and sodomized her. He then forced the victim to perform oral sex on him, after which he had vaginal intercourse with her and attempted, but failed, to penetrate her anally. The victim testified that she did not consent to any of these acts.

1. In his first enumeration of error, Anderson argues that the trial court improperly admitted into evidence an in-custody statement he gave to Officer Chuck Gammill. We agree and find that this error requires reversal.

Prior to trial, the trial court held a *Jackson-Denno* hearing regarding Anderson's in-custody statement. Officer Gammill testified that when he first met with Anderson at the Clarke County Jail, he read Anderson his *Miranda* rights. According to Gammill, Anderson stated that he wanted to speak with an attorney. As described by Gammill: "I told him that that was fine. That the only reason I was there was to get his side of the story. If there was something that I needed to know that he may want to go ahead and tell me." The trial court asked Gammill why he did not stop the interview when Anderson asked for counsel. Gammill explained: "Well, at that point I told [Anderson] that I was there to get his side of the story. I wanted to know his perspective on the events that had occurred. And if there was anything else that I needed to be looking into from anything that he told me that I would continue the investigation from there. At that point I said but it's your right not to talk to me. If you don't want to, you don't have to. I then started down the steps in order to go get the

deputies to put him back into the cell, and he said wait. I do want to talk to you. He summoned me back up the steps, and at that point I [again read him his *Miranda* rights and] took a statement from him."

"Under the rule of *Edwards v. Arizona*, [451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981)], and *Michigan v. Jackson*, [475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986)], once an accused in custody invokes the right to counsel, he should not be subject to further interrogation by the authorities until counsel is present, unless the accused himself initiates further communication, exchanges or conversations with the police. [Cit.] If police initiate questioning after the invocation of the right to counsel, any uncounseled waiver of that right is invalid. [Cit.]" *Roper v. State*, 258 Ga. 847, 849 (1) (375 SE2d 600) (1989). Applying this standard, we conclude that Officer Gammill improperly continued to interrogate Anderson after he invoked his right to counsel.

(a) Citing *Davis v. United States*, 512 U. S. 452 (114 SC 2350, 129 LE2d 362) (1994), the State argues that Anderson's request for counsel was unclear, ambiguous, and did not require Gammill to halt the interview. The trial court made no specific finding on this issue.

Under *Davis*, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [precedent] do[es] not require the cessation of questioning. [Cits.]" (Emphasis in original.) 512 U. S. at 459; see also *Jordan v. State*, 267 Ga. 442 (480 SE2d 18) (1997) (discussing *Davis*). In this case, Gammill initially testified that Anderson stated "he thought that he should speak to an attorney before speaking with me." Upon further questioning, Gammill admitted he could not recall Anderson's exact words but believed that Anderson "did indicate . . . he felt like he would probably want an attorney before speaking with [Gammill]."

Focusing on these statements, the State argues that Anderson never explicitly requested counsel. Gammill also affirmatively testified, however, that Anderson "said that he wanted an attorney." Through his conduct, Gammill further acknowledged that Anderson invoked his right to counsel at the beginning of the interview. At that point, Gammill began to leave the interview area because, in his view, the meeting was over following Anderson's request. Gammill clearly regarded Anderson's statements as a request for counsel. The State's claim that Anderson failed to unambiguously ask for counsel is without merit.

(b) We further find that Officer Gammill improperly interrogated Anderson after he exercised this right. The term "interrogation" is not limited to express questioning. *Hibbert v. State*, 195 Ga. App. 235, 236 (393 SE2d 96) (1990). It includes " 'any words or actions on the

part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.'" Id.

Gammill understood that Anderson wanted to speak with an attorney and stated that Anderson's decision was "fine." Nevertheless, Gammill encouraged Anderson to give "his perspective" of the events and stated that he might "want to go ahead and tell [Gammill]" about details that would help the investigation. The State argues that Anderson reinitiated the interview, and thus waived his right to counsel, by calling Gammill back from the exit stairway. Under the circumstances of this case, however, Anderson's actions do not amount to a valid waiver. Anderson did not initiate additional conversation with Gammill, but instead *responded* to Gammill's cajoling. Compare *Jordan*, supra at 445 (finding that defendant who repeatedly initiated conversations with police knowingly and intelligently waived any right to counsel he may have previously invoked). Anderson's uncounseled waiver of his right to counsel is not valid. *Roper*, supra. His in-custody statement should have been excluded from evidence.

(c) We also find that the trial court's error in allowing the statement into evidence was harmful. Although the offending statement does not contain a confession per se, it reveals that Anderson was in the victim's house on the night in question and allegedly had consensual sexual relations with her. The admission placed him at the scene of the crime, thus gutting any possible defense that Anderson was not involved with the victim or at her home on the night of the incident. We cannot say that this admission did not contribute to the jury's verdict of guilty on the burglary, aggravated sodomy, and rape charges. Accordingly, Anderson must be given a new trial. *Roper*, supra at 852; *Mobley v. State*, 164 Ga. App. 154, 158-159 (6) (296 SE2d 617) (1982).

2. Anderson's second enumeration of error involves the admissibility of certain similar transaction evidence. Because this issue may arise during retrial, we now address it.

Anderson argues that the trial court erred in admitting evidence of a prior incident involving his common-law wife. According to Anderson, this incident was not sufficiently similar to the facts in this case and should have been excluded from evidence. We disagree.

Before the trial court admits similar transaction evidence, the State must show, among other things, that "there is a sufficient con-

nection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. [Cit.]" *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). At a pretrial hearing regarding similar transactions, the State proffered the testimony of a female witness who had been Anderson's common-law wife until 1983, when the couple ended their relationship. According to the proffer, Anderson "came to [the victim's] house [one night in 1984]. He grabbed her by the throat. He drug [sic] her down the street, and he raped her twice at that instance." The State also proffered evidence that Anderson tried to force the witness to perform oral sodomy on him.

"The rules regarding the use of similar transaction evidence are construed most liberally in cases involving sexual offenses. [Cit.]" *Nichols v. State*, 221 Ga. App. 600, 601 (3) (473 SE2d 491) (1996). The State's proffer showed numerous similarities between the 1984 incident and the offense at issue in this case. The two incidents need not be identical. *Guyton v. State*, 206 Ga. App. 145, 146 (1) (424 SE2d 87) (1992). The trial court did not abuse its discretion in finding that the 1984 incident was sufficiently similar to the crime charged and met all other requirements for admissibility. See id.

Anderson further challenges the evidence because the witness' testimony at trial differed in some respects from the State's proffer at the similar transaction hearing. The claimed disparity between the proffered evidence and the actual testimony, however, "has not been shown to have been known or anticipated by the State at the time of the hearing in the matter." *Meier v. State*, 190 Ga. App. 625, 627 (3) (379 SE2d 588) (1989). Furthermore, we find that the differences cited by Anderson, such as the number of times Anderson forced the witness to have sex with him, do not dilute the similarity between this incident and the offense being prosecuted. Id. Accordingly, Anderson's second enumeration of error has no merit.

3. In light of our decision in Division 1, we need not address Anderson's other enumerations of error.

### Case No. A97A1371

In his sole enumeration of error in this case, Anderson argues that the evidence was insufficient to support the jury's guilty verdict on the robbery by sudden snatching charge. We disagree.

At trial, Cula Jackson testified that as she arrived home one night, a man approached her, pulled her purse from her arm, and fled. Police officers responding to the scene saw a man who fit the description of the robber. They pursued and eventually caught that individual, who still had Jackson's purse with him. At trial, the officers identified Anderson as the individual they chased and appre-

hended with Jackson's purse. One officer further testified that Anderson admitted taking Jackson's purse when he was arrested. Anderson testified on his own behalf. He freely admitted that he stole Jackson's purse. He denied, however, snatching it from her hand or arm. According to Anderson, he picked up the purse from Jackson's porch after she placed it on the ground by her feet to unlock her door. He further testified that Jackson yelled at him as he ran away with the purse.

Under OCGA § 16-8-40 (a), "[a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y sudden snatching." Anderson claims that he cannot be guilty of robbery by sudden snatching because the evidence shows he took Jackson's purse from her porch, rather than her arm. Jackson clearly testified, however, that Anderson snatched the purse from her arm. "Conflicting evidence is for resolution by the jury. [Cit.] Credibility of the witnesses is also a jury question. [Cit.]" *Sanders v. State*, 167 Ga. App. 404, 405 (3) (306 SE2d 697) (1983). Viewing the evidence in the light most favorable to support the verdict, we find the evidence sufficient to authorize a rational trier of fact to find Anderson guilty beyond a reasonable doubt of robbery by snatching. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Diggs v. State*, 208 Ga. App. 875, 876 (2) (432 SE2d 616) (1993).

Furthermore, even if the jury believed Anderson's account, the evidence was sufficient to support the verdict. As we have previously found, " '[t]he meaning of presence is, not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection, that will suffice.' " *Bryant v. State*, 213 Ga. App. 301, 302 (444 SE2d 391) (1994). " 'In order to prove a case of robbery by suddenly taking or carrying away the property of another without his consent, it is only necessary to show that the person robbed was conscious that something was being taken away from him, and that for any reason he was unable to prevent it.' " Id. Anderson admitted that Jackson began to yell after he took her purse. A jury could reasonably find that Jackson was conscious of a theft from her immediate presence. Anderson's argument that he cannot be guilty of robbery by sudden snatching is without merit.

*Judgment affirmed in Case No. A97A1371. Judgment reversed in Case No. A97A1370. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 3, 1997 —
RECONSIDERATION DENIED SEPTEMBER 30, 1997 — ▮▮▮▮▮▮▮

*James D. Crowe, Janet S. Willy*, for appellant.

*Harry N. Gordon, District Attorney, James D. Love, Gerald W. Brown, Assistant District Attorneys,* for appellee.