A89A0132. NOBLES v. THE STATE.
(382 SE2d 637)

SOGNIER, Judge.

Richard Jason Nobles was indicted for the offenses of murder and possession of a knife during the commission of a felony. Nobles was found guilty of voluntary manslaughter and also was convicted on the possession charge. He appeals.

The evidence adduced at trial reveals that appellant, a juvenile five weeks shy of his 17th birthday at the time of the incident, the

evening of July 3, 1987, arrived uninvited at a party held by Ricky Harvey. Appellant was accompanied by his girl friend, Christie Kent, Arnold Howard, and Howard's girl friend. Howard testified that because of prior altercations between Howard and several of the invited guests, he gave appellant a knife. After Kent went inside the residence to use the bathroom she became involved in a fight with another girl which spilled into an area outside the residence. The evidence conflicts as to what happened, but construing the evidence to support the verdict it appears that several of the guests either joined in the fight or entered the fray in order to break up the fight. Witnesses testified they saw the victim, Edwin Jenkins, disassociate himself from the crowd of teenagers observing the fight and return to the house. While inside, Jenkins was stabbed with a knife and later died from his injuries. Kent's sister testified that around midnight appellant arrived at her home, covered in mud, and told her he believed he had stabbed someone. She hid appellant and her sister at the unoccupied home of a recently deceased relative until appellant decided to go to the police with his brother. The knife Howard gave appellant was retrieved from the swamp between Ricky Harvey's home and the residence of Kent's sister.

At trial appellant testified he had stabbed Jenkins, whom he did not know, because Jenkins was beating up Kent in the aforementioned fight. The statement appellant gave the police, which was admitted at trial, was consistent with appellant's trial testimony.

1. (a) Appellant contends the trial court erred at the hearing conducted pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), by failing to suppress the statement he made to the police on the bases that the statement was not voluntary, that appellant was denied his right to counsel after invoking that right, and that the statement was the product of an illegal arrest.

Appellant, in the company of his 21-year-old brother, Barr Nobles, voluntarily went to the police department around 2:00 a.m. on July 4th. The officers, who were in the process of interviewing Howard at that time, immediately ended their discussion with Howard when informed that appellant had arrived, and escorted appellant and his brother into an interview room. A taped interview was initiated, and the transcript reveals that after inquiring into appellant's address, age, education, and related matters, Detective Robert Merriman asked appellant whether he had had anything to drink that night (to which appellant replied negatively), then informed appellant that before they discussed what happened earlier that evening, "I'm going to have to advise you of certain constitutional rights." Merriman began to read appellant his *Miranda* rights (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)), asking both appellant and his brother whether they understood each right as read. Merri-

man informed appellant that he had the right to talk to a lawyer before he answered any questions and to have that lawyer present during questioning. Then, according to the transcript of the statement, the following occurred:

Appellant: "You say I can have an attorney right now?"

Det. Merriman: "If you wanted one."

Appellant: "I would like one."

Det. Merriman: "You don't want to talk about the matter?"

Appellant: "Oh, okay, I'll go ahead and talk about the matter."

We agree with appellant that his initial invocation of his right to counsel could not have been clearer or less equivocal, and therefore reject the State's argument that the detective's subsequent conversation with the appellant served to "clarify" appellant's request. Nor can we agree with the State that the conversation which followed appellant's request, in which the detective inquired several times whether appellant wanted an attorney, repeatedly asked appellant if he understood what the detective was saying, and elicited from appellant's brother the statement that appellant did want an attorney but he wanted to go ahead and tell the police his side of the story, "but he does want an attorney if there are any charges pressed against him," can be used to cast doubt on the clarity of appellant's initial request. See *Smith v. Illinois*, 469 U. S. 91 (105 SC 490, 83 LE2d 488) (1984).

"*Edwards* [*v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981)] set forth a 'bright-line rule' that *all* questioning must cease after an accused requests counsel. [Cit.] In the absence of such a bright-line prohibition, the authorities through 'badger(ing)' or 'overreaching' — explicit or subtle, deliberate or unintentional — might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance. [Cits.]" *Smith v. Illinois*, supra at 98. The trial court here, as in *Allen v. State*, 259 Ga. 63 (377 SE2d 150) (1989), erred by examining the "totality of the circumstances" to decide whether appellant's request for counsel was clear or equivocal.

Appellant's statement was taken in violation of his Fifth Amendment right to counsel, and, under U. S. Supreme Court precedent, should have been excluded from the State's case in chief. We do not agree with the State that its violation of appellant's constitutional rights was not relevant because he was not in "custody" at the time he gave the statement. The cases cited by the State are inapposite either because the statement sought to be suppressed was given by a defendant *not* read his *Miranda* rights because he was not yet in custody although present in a police station or jail house, see *Hardeman v. State*, 252 Ga. 286, 287-288 (1) (313 SE2d 95) (1984), or was given by a defendant who *was* read an incomplete list of his rights unnecessarily because he was not in custody, but who nevertheless voluntarily

waived the rights he was read. See *Beckwith v. United States*, 425 U. S. 341 (96 SC 1612, 48 LE2d 1) (1976). The transcript of the statement clearly reveals that the police officer who read appellant his rights felt he had to so advise appellant, thereby demonstrating that the police themselves considered appellant to be a suspect so as to mandate informing appellant of his *Miranda* rights. See generally *Cook v. State*, 165 Ga. App. 234, 235 (2) (299 SE2d 157) (1983).

(b) However, even without appellant's statement, and contrary to appellant's eighth enumeration of error, the evidence in this case was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to support the conviction for voluntary manslaughter. "It cannot be said, however, that the constitutional error was harmless beyond a reasonable doubt. [Cit.]" *Allen*, supra at (1) (c). Therefore, the judgment must be reversed for a new trial.

2. Our holding above renders it unnecessary to address appellant's second enumeration of error.

3. The record does not support appellant's contention that the juvenile court judge in the transfer hearing adjudicated the issues and found appellant guilty of voluntary manslaughter. Rather, it is clear that in the order to which appellant refers, the juvenile court was not adjudicating the charge but instead was acting pursuant to OCGA § 15-11-39 (a) (3) (A) and merely determining that there were reasonable grounds to believe that appellant committed the delinquent acts alleged. Therefore, we find no error in the trial court's denial of appellant's plea of double jeopardy. Compare *In re T. E. D.*, 169 Ga. App. 401 (312 SE2d 864) (1984).

4. Appellant contends the trial court erred by denying his motion to quash the indictment and transfer the case back to juvenile court because the juvenile court failed to comply with the provisions of OCGA § 15-11-39 (a). As noted above, the juvenile court fully complied with OCGA § 15-11-39 (a) (3) (A); the record reveals that appellant's counsel stipulated to a report finding that appellant was not in need of commitment to an institution for the mentally retarded or mentally ill under OCGA § 15-11-39 (a) (3) (B); and no question exists regarding appellant's age for purposes of OCGA § 15-11-39 (a) (4). OCGA § 15-11-39 (a) (3) (C) requires the juvenile court to determine there are reasonable grounds to believe that "[t]he interests of the child and the community require that the child be placed under legal restraint and the transfer be made."

"[T]he transfer statute continues to subsume 'the juvenile's amenability to treatment within the concept, "the interest of the child," and authorizes a juvenile court to transfer to the superior court a juvenile who is amenable to treatment if the juvenile court finds that the amenability factor is outweighed by the interests of the community in processing the child as an adult.' [Cit.] Hence, there has been

preserved the requirement that the state carry the burden of showing that the child is not amenable to treatment or rehabilitation. [Cit.]" (Footnote omitted.) *In re E. W.,* 256 Ga. 681, 682 (353 SE2d 175) (1987).

In the case sub judice, the assistant district attorney set forth for the juvenile court without objection from appellant's counsel appellant's prior violations of the law, the probations on which he had been placed and the terms thereof, the problems appellant had with his probation officer which resulted in extra conditions being affixed to his probation, and appellant's participation in a drug rehabilitation program in California and attendance at various local treatment centers. Appellant's history encompassed a period from July 1984 to July 1987. In its order, the juvenile court referenced these early offenses and treatment efforts, and noted the "sad state of affairs in juvenile justice in Georgia" which in his view resulted in a lack of facilities and programs to treat the older juvenile violent offender on a long-term basis. Against these considerations, the juvenile court balanced the nature of the crime for which appellant was charged, which had resulted in the death of another, appellant's age, appellant's three years of treatment in the juvenile justice system, and the inadequate treatment facilities in Georgia for older juveniles who have been found to have committed violent offenses. Based on these expressed considerations, the juvenile court ordered the transfer pursuant to OCGA § 15-11-39.

We find the transfer order realistically reflected why appellant was not amenable to treatment as a juvenile and that the decision was based on evidence clearly reflected in the transfer order itself. See generally *C. L. A. v. State,* 137 Ga. App. 511, 512-513 (5) (224 SE2d 491) (1976); compare *In re E. W.,* supra. Accordingly, we find no error in the trial court's denial of appellant's motion to quash the indictment and transfer appellant's case back to the juvenile court.

5. A scientific report containing the results of tests performed on the knife was printed at the State Crime Lab on April 12, 1988 in response to inquiries by the prosecution in this case. Although proper motion for such reports had been made pursuant to OCGA § 17-7-211 (b), appellant was not provided a copy of the report until the day of trial, April 25, 1988. The trial court denied appellant's motion for a continuance, and appellant enumerates as error the admission of the tests and testimony regarding same and the denial of his motion for a continuance.

The State asserts it did not inform appellant's counsel of the existence of the report because the assistant district attorney thought the crime lab would promptly send the report in time for a copy of the report to be delivered to appellant's counsel within the ten-day period set forth in OCGA § 17-7-211 (b). The State also argues that

appellant's failure to receive the report in the timely fashion required by statute did not prejudice appellant's case because the test results were "equally helpful and harmful to both the State and the defense." We do not agree. "The General Assembly has seen fit to provide certain discovery rights to criminal defendants, and it is the duty of this court to give full force and effect to all provisions of that statute. [Cits.]" *Tanner v. State*, 160 Ga. App. 266, 268 (287 SE2d 268) (1981). However, in view of our holding in Division 1 reversing the judgment for a new trial, we remand this case with direction that testimony and evidence arising from this scientific report be excluded and suppressed from any retrial of this case unless and until the district attorney has fully complied with the provisions of OCGA § 17-7-211. *Tanner*, supra at 268-269.

6. The State concedes it failed to make known to appellant prior to trial the evidence in aggravation used by the State in the sentencing phase of the trial as required by OCGA § 17-10-2. However, we agree with the State that as notice was provided by the State on May 20, 1988 and the hearing was not held until June 10, 1988, adequate notice was given regarding this evidence in that appellant was provided sufficient time to investigate and interview the witnesses listed by the State in its May 20 notice. See *Herring v. State*, 238 Ga. 288, 290 (232 SE2d 826) (1977); *Johnson v. State*, 171 Ga. App. 851, 854 (1) (321 SE2d 402) (1984).

Appellant argues that the State untimely filed the victims' impact statement under OCGA § 17-10-1.1 (d). However, "[a]n enumeration of error may not be enlarged by brief on appeal to cover issues not contained in the original enumeration. [Cit.]" *Scott v. State*, 177 Ga. App. 474, 477 (339 SE2d 718) (1986). We therefore cannot address this issue.

7. We find no error in the trial court's denial of appellant's motion for directed verdict as to the charge of possession of a knife in the commission of a crime in view of testimony by Howard regarding the knife and appellant's possession thereof. See generally *Burton v. State*, 184 Ga. App. 805, 806 (1) (363 SE2d 46) (1987).

8. Appellant contends error in the trial court's failure to charge his request to charge no. 23A on homicide by accident, based on *Olds v. State*, 84 Ga. App. 397, 402 (5) (66 SE2d 396) (1951). At trial appellant testified he stabbed the victim because he thought the victim was assaulting appellant's girlfriend. There was no evidence adduced at trial that appellant was attempting to stab an assailant of his girlfriend and the victim unfortunately came in between the intended victim and the blow. Thus, appellant's requested charge discussed a principle not applicable to the facts of the case and the trial court did not err by failing to give that charge to the jury. See generally *Studdard v. State*, 185 Ga. App. 319, 320 (1) (363 SE2d 837) (1987).

9. We find under the facts in this case no error in the giving by the trial court of a charge on the lesser-included offense of voluntary manslaughter. See *Wright v. State*, 182 Ga. App. 570-571 (2) (356 SE2d 531) (1987).

10. Appellant contends the trial court erred in its charge to the jury on appellant's sole defenses, those of self-defense and justification. Although it may have been better practice to have included explicitly all the principles set forth in OCGA § 16-3-21, upon reviewing the charge to the jury as a whole, see generally *Johnson v. State*, 187 Ga. App. 803, 804 (3) (371 SE2d 419) (1988), we find the trial court adequately covered those principles in its charge and find the charge as given a correct statement of the law applicable in this case. Although appellant now asserts the trial court erred by failing to charge the jury numerous of his other requests to charge, appellant did not enumerate as error the failure to give these charges and thus cannot enlarge his enumeration to include these arguments on appeal. See *Scott*, supra.

*Judgment reversed with direction. Banke, P. J., and Pope, J., concur.*

Decided May 8, 1989 —
Rehearing denied May 18, 1989 —

*Jackson & Schiavone, Michael G. Schiavone*, for appellant.
*Spencer Lawton, Jr., District Attorney, Barry I. Mortge, Assistant District Attorney*, for appellee.