A89A1148. KENNEDY v. THE STATE.
(389 SE2d 350)

BIRDSONG, Judge.

Rodney Maurice ("Pogo") Kennedy appeals his conviction of voluntary manslaughter. He had been indicted for malice murder in the stabbing death of William Thomas House, during or immediately after an argument or disagreement the two had concerning a cocaine deal, which had left appellant angry or disgruntled. *Held*:

1. Appellant Kennedy contends the trial court erred in admitting evidence of an irrelevant series of events involving several purchases by appellant of cocaine for others, including the deceased, and the use of cocaine by appellant and the deceased and others. These events began around 1:30 p.m. on March 25, 1988, and continued intermittently with appellant and the deceased each going to work in the meantime, and appellant leaving the job to purchase cocaine for the group, and then returning to work, until after midnight, when appellant left work. He returned to the motel room of these same friends, and confronted the deceased about appellant's entitlement to a "cut"

out of the last cocaine appellant had purchased for the group earlier that evening. The deceased avowed he could not give appellant any, because the cocaine was not his (the deceased's). Appellant complained that the deceased had "done [me] dirty." The argument which ensued escalated to a confrontation which appellant described as a struggle in which he acted in self-defense; but other witnesses testified appellant simply stabbed House. The varied versions were resolved by the jury with a verdict finding somewhat less than malice murder, i.e., voluntary manslaughter.

We reject out of hand appellant's contention that the series of drug-related activities engaged in by appellant and the deceased beginning at 1:30 p.m. in the afternoon, and culminating in House's death only a few hours later, were irrelevant to the cause and manner of death. The entire question set before the jury was the intention, or lack of intention, of appellant in killing William House; and the intention of appellant could only be discerned in the light of the entire series of drug transactions that the two had engaged in for hours immediately preceding the killing. In fact, in the circumstances of this case, the prosecution's accusation of malice murder versus appellant's claim of self-defense, could not be determined without a thorough delving into the relationship and activities of the two that preceded the killing, particularly since the deceased was not present to testify as to what happened during the few minutes before House was killed.

Appellant's enumerated contention that the evidence of "drug use and transactions that occurred earlier in the day [were] not related to [the] incident at the Bartow Motel where the stabbing occurred," is completely without merit as a matter of fact. The transactions were directly and intrinsically related. The entire series of drug transactions throughout the day ended in House's death.

Appellant contends nevertheless that these matters involve "independent crimes and bad character [of] appellant that were not connected to the stabbing incident." OCGA § 24-2-2 provides: "The general character of the parties and especially their conduct in other transactions are irrelevant matter[s] *unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct.*" (Emphasis supplied.) The evidence in this case showed fairly that House's death was the culmination of, or at the very least occurred at the end of the drug transactions he and appellant had engaged in throughout the day.

When transactions involving other crimes and the alleged bad character of appellant are so connected in time and event as to be part of the same transaction as that for which the accused is being tried, they are admissible as a clear exception to the general rule of inadmissibility of other transactions. *Durham v. State*, 243 Ga. 408 (254 SE2d 359); *Williams v. State*, 223 Ga. 773 (158 SE2d 373); *Bai-*

*ley v. State*, 214 Ga. 409 (105 SE2d 320). The allegedly separate events are admissible in evidence when they are part of a continuous course of conduct, closely connected in time, place and manner of commission. *Putman v. State*, 251 Ga. 605 (308 SE2d 145), cert. den. 466 U. S. 954 (104 SC 2161, 80 LE2d 546).

Moreover, this evidence was admissible not merely as an exception to any rule, but as *direct evidence*. The events here in question were part of one long series of transactions that altogether resulted in the immediate confrontation between appellant and William House that ended with House's death. In situations involving "prior difficulties," *which, unlike those in this case are not even related in time and activity*, our courts have repeatedly held that such evidence is directly admissible, even if it does tend to place the defendant's character in issue, because it is relevant to "illustrate the accused's motive, intent, or bent of mind toward the victim," and " 'is admissible [as otherwise] shedding light on the state of feelings between the accused and the deceased and showing motive.' " *Hales v. State*, 250 Ga. 112, 113 (296 SE2d 577). " 'Evidence which is otherwise admissible is not rendered inadmissible because it incidentally places the defendant's character in issue.' " Id.; *Boling v. State*, 244 Ga. 825, 828 (262 SE2d 123).

We have no doubt the evidence of the continuing and intermittent activities engaged in by appellant and the deceased were entirely relevant in this case, and in fact necessary to a thorough investigation of the truth. Moreover, if there had been any question or doubt as to its relevance or competence, our rule has always been that, lest the truth be hidden, the evidence should be admitted and its weight left to the determination of the jury. " ' "When facts are such that the jury, if permitted to hear them, may or may not make an inference pertinent to the issue, according to the view which they may take of them, in connection with the other facts in evidence, they are such that the jury ought to be permitted to hear them." ' " *Prothro v. State*, 186 Ga. App. 836, 838-839 (368 SE2d 793), quoting *Johnson v. State*, 148 Ga. App. 702, 703 (1) (252 SE2d 205).

The trial court did not err in letting in the entirety of the evidence complained of.

2. Appellant contends the trial court erred in admitting in evidence a photograph of the deceased taken during the autopsy, which photo showed the deceased's chest "completely laid open." Appellant cites *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) as conclusive law that such depictions of mutilation during autopsy "will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy." The reason stated in *Brown* for this rule is "[t]he . . . mutilation of a body at autopsy has no . . . relevance and may cause confusion, if not prejudice, in the

mind of jurors."

The trial court did not err in the admission of the photograph in the circumstances of this case. The photograph allowed the jury to see the size and extent of the stab wound made by a 3-½ inch knife in the left ventricle of the deceased's heart. Inferences fairly drawn from this viewing, upon the foundation laid by the medical examiner, could refute and contradict appellant's version of the fatal event. Appellant contended House chased him not only before but *after* he stabbed House; from the evidence the jury might reasonably conclude the deceased could not likely have done so after sustaining such a wound to the heart. Witnesses testified appellant simply stabbed the victim as the victim stepped from the hotel room at the door; the State contended appellant did so in a burst of anger that House had offended "drug etiquette." The jury could reasonably draw inferences consistent with the State's version and testimony, by viewing the single deep hole in the heart, and determining whether it was made during an assaultive chase and struggle, and whether House could have done any more chasing after this stabbing.

The circumstances of this case fit neatly within the ambit of *Brown*, supra, for properly admitting such photographic evidence. Certainly the reason *Brown* denounced such evidence (that the "mutilation of a body at autopsy has no . . . relevance and may cause confusion, if not prejudice"; id.) does not apply here. The State's purpose in showing this photograph was not to display the mutilation of the body at autopsy, but to show exactly what could only be seen in a photograph such as this: the fatal wound. We thus find no merit in this enumeration.

3. Finally, appellant contends he was erroneously denied a jury charge on "involuntary manslaughter," based on his defense of self-defense, i.e., that he had committed a lawful act (self-defense) in an unlawful manner (by use of too much force).

This classic complaint, after long debate, has been resolved in this state. "[A] defendant who seeks to justify homicide under the 'self-defense' statute, OCGA § 16-3-21 [cit.], is not entitled to an additional instruction on involuntary manslaughter in the course of a lawful act, (OCGA § 16-5-3 (b) [cit.]) . . . *[I]f he is justified in killing under OCGA § 16-3-21 [cit.], he is guilty of no crime at all. If he is not so justified, the homicide does not fall within the 'lawful act' predicate of OCGA § 16-5-3 (b) [cit.], for the jury, in rejecting his claim of justification, has of necessity determined thereby that the act is not lawful.*" (Emphasis supplied.) *Saylors v. State*, 251 Ga. 735 (3) (309 SE2d 796); *Stewart v. State*, 182 Ga. App. 576 (356 SE2d 535). The logic of this statement is unassailable.

Appellant, indicted for murder and convicted of voluntary manslaughter, has no grounds for reversal of this conviction.

*Judgment affirmed. Deen, P. J., concurs. Benham, J., concurs specially.*

BENHAM, Judge, concurring specially.

I concur specially because, while I agree with the affirmance of the judgment of conviction entered against appellant, I find myself at odds with the majority's affirmance of the admission of the autopsy photograph.

The photo at issue, taken after the victim had expired, depicts the victim's open chest cavity and heart, as well as several blood-covered, gloved hands. The medical examiner testified that hospital emergency room surgeons had earlier sewn up the hole in the victim's heart caused by the stabbing, and had reopened the victim to remove the stitches after the victim's death, one and a half hours after the initial operation. The photo was taken after the stitches were removed.

In *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983), the Supreme Court announced that "[a] photograph which depicts the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy." "[I]t is error to admit photographs that portray damage to the victim's body that was not caused by the assailant. [Cits.]" *Roper v. State*, 258 Ga. 847 (3) (375 SE2d 600) (1989). In the case at bar, it was unquestioned that appellant had stabbed the victim and that the victim had died as a result. Thus, the photograph was not "necessary" to show that the victim had died from a stab wound. The State maintains that the photograph was necessary to rebut appellant's assertion that he had acted in self-defense. The State theorizes that the jury needed to view the internal stab wound in order to determine whether the victim could have assaulted appellant prior to the fatal stabbing, as appellant testified he did, and whether the victim could have chased appellant after the stabbing. I do not believe the jury was capable of looking at the photograph and discerning from it whether the wound was such as to refute appellant's defense. In addition, the State had the testimony of eyewitnesses to establish what happened before the stabbing, and the testimony of the medical examiner, who stated that the wound the victim received would have incapacitated him within 20 or 30 seconds of the stabbing, to rebut appellant's testimony concerning the victim's post-stabbing capabilities. *Brown* clearly required the exclusion of the post-autopsy photograph of the victim's heart. *McCullough v. State*, 255 Ga. 672 (2) (341 SE2d 706) (1986). However, due to the overwhelming evidence supporting the jury verdict, I must conclude that the admission of the photograph, although error, must be relegated to

the category of harmless error. *Heard v. State*, 257 Ga. 1 (2) (354 SE2d 115).

DECIDED NOVEMBER 20, 1989 —
REHEARING DENIED DECEMBER 4, 1989 — 

*Nelson & Bradley, Stephen R. Bradley, G. Carey Nelson III*, for appellant.

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.