A91A1047. NOBLES v. THE STATE.
(411 SE2d 294)

McMURRAY, Presiding Judge.

This is the third appearance of this case. Nobles, who was 16 years old at the time of the crimes, was indicted for murder and possession of a knife during the commission of a felony and convicted of voluntary manslaughter and the knife possession charge on April 28, 1988. In *Nobles v. State*, 191 Ga. App. 594 (382 SE2d 637), where the pertinent facts are stated, these convictions were reversed because a statement taken from Nobles in violation of his *Miranda* rights (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694)), was introduced in evidence. After remand for retrial, a second appeal was brought from the denial of Nobles' double jeopardy claim, in which this Court held that although the in-custody statement should not have been admitted, the remaining evidence was sufficient to support both convictions. *Nobles v. State*, 195 Ga. App. 725 (394 SE2d 613). Nobles was retried before a jury and on October 4, 1990, was again found guilty of voluntary manslaughter and possession of a knife during the commission of a felony. He was sentenced to ten years on the first count and five years on the second, to be served consecutively in a youthful offender facility. He appeals therefrom and enumerates 27 errors. *Held*:

1. Appellant Nobles contends that the trial court erred in answering a juror's question by misleading and confusing the jury and making the court's opinion known to the jury. The juror inquired whether, if he came on a scene where his wife was being threatened and he thought she was going to be killed, he would be guilty of voluntary manslaughter if he killed the person who threatened his wife. The

judge replied that he could not tell the juror the answer to the question, but he would try to give him "a pure example without self-defense." He explained that where "two people are at a bar drinking and they have an argument and they get in a fight and one person kills the other[, t]hat's voluntary manslaughter. It's not murder, because there was no malice involved; there was just anger caused by what happened at the bar, the argument they got into." The judge then reinstructed the jury on reasonable doubt. Appellant Nobles argues that the correct answer was "no," and that a recharge on self-defense should have been given at that time. We find no reversible error. Appellant has demonstrated no impropriety in the example given by the trial court or in the instructions following it, and we discern nothing in the illustration which might serve to mislead or confuse the jury. Also, the trial judge did subsequently recharge on self-defense, as he said at the time he intended to do later. Nor is appellant correct in asserting that the court prejudiced the instruction by stating that it was given at appellant's request, as the judge actually told the jury that he had discussed it with "the attorneys and we thought" a recharge on self-defense should be given.

The court has the right on receiving a request for further instructions to give such a reply as the facts may warrant. *Miller v. State,* 195 Ga. App. 89 (3) (392 SE2d 334). " 'Where the trial judge in charging the jury correctly states the law governing the case, but exception is taken to an illustration used by the court explanatory of the illustration given, this court will not narrowly scrutinize the illustration, if satisfied that, whether right or wrong, it was not calculated to mislead, and did not in fact mislead, the jury.' [Cit.] The illustration given by the judge tended to show what is meant in law by [voluntary manslaughter], and was an apt illustration of the idea intended to be conveyed." *Hall v. State,* 239 Ga. 832, 833 (2) (238 SE2d 912).

2. The jury foreman also requested the court to give the jurors some guidelines on which to base their determination of what constituted justifiable force; the judge instructed them that they had to set their own standards and "determine from the facts in this case and from the viewpoint of the defendant what a reasonable man would have done under similar circumstances." Appellant complains that this recharge was reversible error because it failed to inform the jury that under the law a person is justified in using force which is intended or likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person or to prevent the commission of a forcible felony.

" 'Where the jury, after having been charged by the court, returns into court and requests an instruction upon a specific question, it is not error for the judge to confine his instruction to the specific point

suggested by the jury's inquiry. (Cits.) It is within the court's discretion to recharge in full or only upon the point or points requested. (Cits.) . . . The jury asked for a charge on a specific point and the jury was charged upon that point. . . . This was sufficient to satisfy the requirements of the law.' [Cit.]" *Dyer v. State,* 167 Ga. App. 310, 311 (3) (306 SE2d 313). Accord *Brown v. State,* 258 Ga. 152, 154 (4) (366 SE2d 668).

3. The trial court refused the jury's request to see a transcript of the testimony of appellant and his girl friend, which had not been prepared at that time, stating that although there was a tape recording he would not allow it to be played because it would "spotlight [the] testimony out of context with the entire trial." Appellant contends that this was the only evidence offered on his defense of self-defense and, since the jury was denied the opportunity to clarify the facts, appellant did not receive a fair trial. There were numerous witnesses who testified at trial concerning the events leading up to the stabbing of the victim from which the jury could determine the facts. Whether or not to grant a jury's request to rehear portions of such evidence is within the discretion of the trial judge, and appellant has failed to carry his burden of showing that the court abused its discretion here. *Coleman v. State,* 194 Ga. App. 404 (2) (391 SE2d 15). See *Morris v. State,* 254 Ga. 273, 274 (2) (328 SE2d 547).

4. Appellant asserts that the trial court erroneously denied his motion for directed verdict at the close of the State's evidence and his motion for new trial on the general grounds. These enumerations are without merit. The evidence adduced at trial was virtually the same as the evidence adduced at the first trial and it was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of voluntary manslaughter and possession of a knife during the commission of a felony. *Nobles v. State,* 191 Ga. App. 594, 597 (1,b), supra; *Rose v. State,* 195 Ga. App. 399, 400 (2) (393 SE2d 459).

5. Error is assigned to the trial court's allowance of the pathologist's testimony, over appellant's objection, that the cause of the victim's death was "hypovolemic shock secondary to blood loss" because the autopsy report provided to him pursuant to OCGA § 17-7-211 did not contain this information. We are unable to perceive what harm this testimony may have occasioned, and do not agree with appellant that without the cause of death the State could not prove that a crime had been committed which formed the basis of the indictment. Any autopsy report must necessarily be related to the cause of death, and the final diagnosis was delineated on the first page of the report as "stab wound, right flank with transection of liver, colon, duodenum and diaphragm." The authority upon which appellant relies relates to empirical test results of the amount of drugs present in the defendant's blood and urine, concerning which this Court held that the fail-

ure to produce the written scientific report left the defense at a "huge disadvantage" in trying to cross-examine the State's witnesses as to the implications of the test results and the formation of their opinions. See *Durden v. State*, 187 Ga. App. 154 (1), 158 (369 SE2d 764). No grounds for reversal have been shown here.

6. Appellant contends that the trial court erred in quashing a subpoena of a television news reporter, and in denying a hearing on his motion for new trial which precluded a determination of whether the mistrial should have been granted because of jury misconduct or tampering. We note in the record, however, a letter dated November 15, 1990, from defense counsel to the trial judge that not only refers to a hearing on the motion for new trial held on November 9, 1990, but also discusses "another hearing scheduled for December 6, 1990, at which time [appellant] will be given an opportunity to introduce the tape from WSAV in reference to the Court's ruling granting the Motion to Quash [the] subpoena of [the news reporter] in this matter."

No transcript of either of the hearings referred to appears in the record before us on appeal, but the trial transcript and the order granting the motion to quash show that on the morning before the jury returned its verdict, appellant's attorney informed the court that a reporter on the WSAV-TV 6:00 news had stated that he had learned the jury was eleven to one for conviction and one juror was holding out and would not budge. After the jury rendered its verdict of guilty on both counts, the trial court asked the foreman to state how they stood when they were dispersed the previous evening. When the foreman replied that they stood nine to three, the court further questioned the jury as a whole as to whether any of them had seen the telecast in question. All said they had not. Accordingly, the trial court ruled that since the television report was inaccurate and the jury did not see it or hear about it, no impropriety had taken place and piercing the reporter's shield of confidentiality would bring forth no relevant information as required by OCGA § 24-9-30.

Under OCGA § 24-9-30, "[a]ny person, company, or other entity engaged in the gathering and dissemination of news for the public through a newspaper, book, magazine, or radio or television broadcast shall have a qualified privilege against disclosure of any information, document, or item obtained or prepared in the gathering or dissemination of news in any proceeding where the one asserting the privilege is not a party, unless it is shown that the privilege has been waived or that what is sought: (1) Is material and relevant; (2) Cannot be reasonably obtained by alternative means; and (3) Is necessary to the proper preparation or presentation of the case of a party seeking the information, document, or item." (Indention omitted.)

While this case was the subject of intensive news coverage, noth-

ing in the language of this new statute, which first became effective on July 1, 1990, indicates to us that it was meant to be used to uncover the source of mere courtroom gossip or speculation that appears to have been involved here. Nor has it been shown that the disclosure of the source of this erroneous information was in any way material or relevant, or necessary to the presentation of appellant's case. Moreover, the trial court had instructed the jury on several occasions that they were not to read, listen or watch any news reports, nor to discuss the case among themselves or with anyone else. When questioned by the judge they all assured him that they had not seen the telecast. "Qualified jurors, under oath, are presumed in the absence of clear evidence to the contrary to follow the procedural directives of and to honestly respond to questions of the trial judge. [Cit.]" *Dykes v. State*, 191 Ga. App. 879 (2), 880 (383 SE2d 210). We find no error.

7. Error is assigned to the trial court's refusing to excuse for cause two jurors. The first juror indicated that he had heard about appellant and his older brother and felt like the brothers had a "trouble type attitude." During voir dire this juror said it would not be easy, but he "would like to think" he could separate that from his mind and be a fair and impartial juror. When further questioned by the trial court, he responded that "just [in] this courtroom" he could judge the appellant's guilt or innocence without any preconceptions regarding his family. The second juror stated during voir dire that he had heard and read about the case, but he would "require evidence to prove' whether appellant was guilty or innocent of manslaughter. After the judge inquired whether this juror could decide the case solely from what he heard in the courtroom and any law that he was charged, and not from anything else, the juror stated unequivocally that he could do so.

" 'In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. [Cit.]' [Cit.]" *Chancey v. State*, 256 Ga. 415, 425 (349 SE2d 717). " 'The fact that a potential juror may have some doubt as to his impartiality, or complete freedom from all bias, does not demand, as a matter of law that the juror be excused for cause. (Cits.)' [Cit.]" *Scott v. State*, 193 Ga. App. 577, 578 (2) (388 SE2d 416). "While a venireman may initially express doubt as to his or her ability to be impartial, this fact alone does not demand that the prospective juror be excused for cause. When the venireman indicates that he can render a fair and impartial verdict based solely upon the evidence presented at trial, he is prima facie competent to serve. [Cit.] The trial court has the discretion as to whether to strike a juror for cause. [Cits.] We find no abuse of the trial court's discretion. The court followed the provisions of OCGA § 15-12-164 for setting aside a juror for cause and

found that the juror[s] in question could render a fair and impartial verdict." *Lattany v. State*, 193 Ga. App. 438 (388 SE2d 23). Accord *Ward v. State*, 193 Ga. App. 137, 140 (8) (387 SE2d 150). We find no abuse of discretion here.

8. The appellant's contention that the trial court used a different standard for the State than it did with the defense in excusing jurors for cause is not supported by the trial transcript. The two jurors to whom he refers both indicated sympathy for appellant because of his age. One woman said appellant reminded her of her young grandson, and that she could not answer if she could decide the case based on the evidence because she did not know if she could keep her feelings separate. The other woman indicated she had a son and could feel for both sides, but that her husband had worked with appellant's father. When the trial court inquired if she could decide the case without these influences, she replied that she did not think she "could come up with a real clean fair judgment." Absent a manifest abuse of discretion, which has not been shown, we find no grounds for reversal. *Scott v. State*, 193 Ga. App. 577, supra.

9. Appellant contends that the trial court improperly excused a juror for sickness and substituted an alternate because he did not talk to the juror directly but accepted the word of her employer. Unlike *Baptiste v. State*, 190 Ga. App. 451 (379 SE2d 165), upon which appellant relies, an alternate juror was available to serve here, and thus he "has not shown how he was prejudiced by the use of an alternate, since pursuant to OCGA § 15-12-169 alternates are selected in the same manner and must have the same qualifications as members impaneled as the jury." *Forney v. State*, 255 Ga. 316, 317 (1) (338 SE2d 252). Harm, as well as error, must be shown to authorize a reversal by this Court. *Baptiste v. State*, 190 Ga. App. 451, supra at 453 (1).

10. A request to charge relating to the credibility of a witness testifying under a promise of no prosecution by the State was submitted by appellant, but the trial court gave only the standard jury instruction on credibility, to which error is assigned. The charge as given instructed the jurors to consider the witnesses' interest or lack of interest in the case. Also, this witness testified that he had given a statement to the police before he was arrested or knew he was going to be arrested in connection with the stabbing. Where the requested instruction is at least minimally covered adequately by the charge given on credibility of witnesses, the court's failure to charge in the language requested does not constitute reversible error. *Jones v. State*, 188 Ga. App. 240, 241 (3) (372 SE2d 828). The Suggested Jury Pattern Instruction on credibility of witnesses alone was sufficient. *Sharp v. State*, 196 Ga. App. 848, 850 (4) (397 SE2d 186).

11. Appellant insists that he was entitled to a change of venue because of the extensive pretrial publicity surrounding the case.

" 'The decision to grant a change of venue lies within the discretion of the trial court, and its discretion will not be disturbed absent an abuse of discretion. [Cits.]' [Cit.]" *Chancey v. State*, 256 Ga. 415, 430, supra. " 'Traditionally, a defendant seeking a change of venue on the basis that the setting of the trial is inherently prejudicial relies heavily if not primarily or exclusively on news media reports, particularly newspapers (because they are easier to collect). However, widespread or even adverse publicity is not in itself grounds for a change of venue. [Cits.] On appeal, the impact of media publicity is evaluated by various factors, such as the size of the community and the extent of media coverage (number of articles and their circulation); whether it is related to the discovery of the crime (e.g., facts regarding the victim) or to the apprehension or interrogation of the defendant (and whether any publicized confession was admitted at trial); the prominence and content of the reports (e.g., facts vs. speculation and emotionalism, and the accuracy and admission into evidence of those facts); and the time interval between the publicity and the trial. [Cits.]' [Cit.]" *Cargill v. State*, 255 Ga. 616, 628 (10) (340 SE2d 891).

While the trial of the case sub judice was of considerable interest and certainly was well-covered in the Savannah, Chatham County area news reports, our review of the evidence of record does not convince us that the publicity was so inflammatory, the area so small, or the citizenry so subject to community pressures as to require a change of venue. Defense counsel was allowed individual sequestered voir dire, and the transcript reveals that he was allowed " 'wide leeway' in asking questions and to excuse for cause any person who was 'suspect at all.' " *Jackson v. State*, 258 Ga. 810, 811 (4), 812 (375 SE2d 454). The newspaper articles were generally factual and without emotionalism, speculation or acceptance of appellant's guilt. Moreover, the time interval between the two trials was sufficiently long to allow memories and passions to fade.

"In any event, 'the record of publicity in the months preceding, and at the time of, the . . . trial does not reveal the "barrage of inflammatory publicity immediately prior to trial," [cit.], amounting to a "huge . . . wave of public passion," [cit.], that the court found in *Irvin* [*v. Dowd*, 366 U. S. 717 (81 SC 1639, 6 LE2d 751)].' [Cit.] '(T)here is no evidence of a "total inundation of the judicial process by the media" at this trial. [Cits.]' [Cit.] We cannot say that the setting of the trial was inherently prejudicial as a result of pretrial publicity." *Chancey v. State*, 256 Ga. 415, supra at 430-431. Appellant "has not shown inherent prejudice as a result of pre-trial publicity or widespread community fear and bias, nor has he shown actual prejudice in the jury selection process. [Cit.]" *Jackson v. State*, 258 Ga. 810, supra at 812.

12. The assertion that the trial court erred in denying his first

plea of double jeopardy in 1988 concerning the juvenile court proceedings was decided unfavorably to appellant by this Court in *Nobles v. State,* 191 Ga. App. 594, 597 (3), supra.

13. Error is also asserted in the trial court's denial of appellant's second plea of double jeopardy on March 2, 1990, allowing him to be retried for the same offenses. This enumeration is likewise without merit. In *Nobles v. State,* 195 Ga. App. 725, supra, this Court noted that while appellant's convictions of voluntary manslaughter and possession of a knife were reversed on a determination that his in-custody statement should not have been admitted into evidence in the first *Nobles,* "we expressly held that the remaining evidence was sufficient to support both convictions. . . . The prior holding of this court with respect to the sufficiency of the evidence was binding upon the trial court, which consequently did not err in denying the appellant's plea of former jeopardy. [Cits.]" Id.

14. Appellant's claim that his motion to quash the order transferring the case from juvenile court to superior court before the first trial was erroneously denied has also been fully addressed and adversely adjudicated. *Nobles v. State,* 191 Ga. App. 594, 597 (4), supra.

15. The trial court allowed in evidence, over appellant's objection, a photograph of the victim's body taken at the morgue before the autopsy which shows the knife wound and also another photograph as evidence relevant to the State in excluding a theory of self-defense and to assist the jury in determining the location of the wound relative to the rest of the body. " ' "A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant." [Cit.]' [Cit.] [Such photographs are] 'relevant and material to show the location of the wounds, [cit.]. . . .' " *Brooks v. State,* 258 Ga. 20, 22 (3) (365 SE2d 87). Accord *Motes v. State,* 192 Ga. App. 302, 305 (5) (384 SE2d 463). We find no error in admitting the photographs objected to by appellant.

16. Contrary to appellant's argument, his requested charges on misdemeanor involuntary manslaughter while acting in self-defense were properly rejected. "This classic complaint, after long debate, has been resolved in this state. '(A) defendant who seeks to justify homicide under the "self-defense" statute, OCGA § 16-3-21 (cit.), is not entitled to an additional instruction on involuntary manslaughter in the course of a lawful act, (OCGA § 16-5-3 (b) (cit.)). . . ." *Kennedy v. State,* 193 Ga. App. 784, 787 (3) (389 SE2d 350).

17. Nor was appellant entitled to a charge on mistake of fact under OCGA § 16-3-5, since his defense was based on justification and self-defense and the trial court instructed the jury on these points. *Pullin v. State,* 257 Ga. 815, 817 (3) (364 SE2d 848).

18. This Court upheld the refusal to charge a similar request on

homicide by accident in *Nobles v. State*, 191 Ga. App. 594, 599 (8), supra, which is also cited as error here. As stated in the previous case, "appellant testified he stabbed the victim because he thought the victim was assaulting appellant's girlfriend. There was no evidence adduced at trial that appellant was attempting to stab an assailant of his girlfriend and the victim unfortunately came in between the intended victim and the blow. Thus, appellant's requested charge discussed a principle not applicable to the facts of the case and the trial court did not err by failing to give that charge to the jury. [Cit.]" Id. at 599.

19. The objections raised by appellant to the trial court's charge that a person will not be presumed to act with criminal intent do not warrant a reversal of his conviction. While he contends that the instruction lessened the presumption of innocence and relieved the State of its burden of proof, immediately prior to the language he deems unsuitable the court charged that intent was the essential element of the crime and must be proved beyond a reasonable doubt by the State. "The failure of the trial court to charge in the exact language requested is not reversible error where the charge given substantially covered the same legal principles. [Cits.]" *Stephens v. State*, 196 Ga. App. 29, 30 (2) (395 SE2d 353). Accord *Walthour v. State*, 196 Ga. App. 721, 722 (5) (397 SE2d 10).

20. Appellant contends that the trial court's charge on reasonable doubt violated due process because it lessened the standard of proof required for a conviction. However, this instruction has been approved in *Thomas v. State*, 248 Ga. 247, 250 (6) (282 SE2d 316), where the Supreme Court held that it "is clearly not burden-shifting. It merely defines the degree of proof required of the State to carry its burden of proof." Here, as in *Thomas*, the charge was given in connection with an instruction on the State's burden of proving the guilt of the accused beyond a reasonable doubt.

21. We do not agree with appellant that the trial court's inadvertent use of the word "evident" rather than the correct word "imminent" in referring to the use of unlawful force in the charge on self-defense was confusing or misleading to the jury. In any event, the trial court recharged the jury on the same issue using the correct language. "A mere verbal inaccuracy in a charge, which results from a palpable 'slip of the tongue,' and clearly could not have misled the jury, is not reversible error. [Cit.] Even treating the charge as erroneous, no harm resulted to appellant because the court subsequently gave the correct charge. . . . Under such circumstances, we find no error." *Hadden v. State*, 181 Ga. App. 628, 629 (3) (353 SE2d 532).

22. It was not necessary for the trial court to give the appellant's requested instructions on his contention that his girl friend was being subjected to the forcible felony of aggravated assault when she was

hit and kicked, and to explain that hands and feet may be deadly weapons so that the appellant was justified in killing the victim if the victim manifestly intended to commit a felony. "In its charge on self-defense, the trial court charged the jury, in part, that a person is justified in using force which is intended or likely to cause death or great bodily injury only if he reasonably believes such force is necessary to prevent death or great bodily injury to himself. This was a correct statement of the law, OCGA § 16-3-21 . . ., and whether fists and feet can be dangerous weapons under certain circumstances was not material to the issue of self-defense. The determining factor in self-defense is not whether the victim was using a deadly weapon, but whether appellant reasonably believed the amount of force *he* used was necessary to prevent death or great bodily harm to himself [or another]." *Ellis v. State*, 168 Ga. App. 757, 760 (5) (309 SE2d 924).

" 'It is unnecessary to give the precise language of a requested charge when the principles upon which the jury must make its decision have been clearly explained by the trial court. Such being the situation in this case, the assignment of error is without merit.' [Cit.]" *Moore v. State*, 197 Ga. App. 9, 10 (2(a)) (397 SE2d 477).

23. Appellant asserts error in the failure of the trial court to give a requested charge "that one reacting to an attack by an aggressor in repelling such attack, to protect his own life or the life of a third person, is not acting under the excitement of passion as contemplated by the voluntary manslaughter statute, but rather is acting in self-defense." The trial court gave adequate instructions on self-defense and the requested charge essentially informs the jury that one always acts in self-defense if he is resisting an attack. For the reasons stated in Division 22 herein, we find no error in refusing to give this charge.

24. After the jury requested an explanation of voluntary manslaughter during deliberations, the trial court recharged the subject and then attempted to explain the instructions in layman's terms with the preface that it was "always dangerous for a judge to go beyond the stilted language of the law, because you never know what the appellate court might think of what you say here. . . ." Appellant claims that this remark, to which he objected, constituted reversible error because it conveyed the impression that the trial court believed he would be found guilty and have to appeal. See *Faust v. State*, 222 Ga. 27 (2) (148 SE2d 430). "We do not agree. Although '(i)t is error for any judge in any criminal case . . . to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused,' OCGA § 17-8-57, the comment challenged here did not constitute a statement of opinion either as to proof or as to guilt. . . . [Cit.] 'While it is better practice, during the trial of cases, for the court and counsel not to make references to . . . the reviewing courts except to cite their decisions as authority; yet the statement here . . .

could in no wise be so construed as prejudicial to the accused. . . .' [Cit.]" *Najmaister v. State*, 196 Ga. App. 345, 346 (1) (a) (396 SE2d 71). Accord *Fletcher v. State*, 197 Ga. App. 112, 113 (3) (397 SE2d 605); *Mullen v. State*, 197 Ga. App. 26 (4) (a) (397 SE2d 487).

25. Nor do we agree that the trial judge suggested to the jury on recharge that the verdict should be voluntary manslaughter in explaining that voluntary manslaughter was the type of homicide charged in the case. *McMullen v. State*, 199 Ga. 521, 525 (2) (34 SE2d 892). Having considered all of appellant's enumerations of error, we find no grounds warranting reversal for any reason cited.

*Judgment affirmed. Sognier, C. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 10, 1991 —
RECONSIDERATION DENIED OCTOBER 15, 1991 —

*Jackson & Schiavone, Michael G. Schiavone, Mark E. Smith*, for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney*, for appellee.