A92A2290. GREENWAY v. THE STATE.
(428 SE2d 415)

McMURRAY, Presiding Judge.

Defendant Greenway appeals his conviction of five counts of rape, five counts of burglary, and single counts of aggravated sodomy, aggravated assault, criminal attempt to commit burglary, and possession of tools for the commission of crime. *Held:*

1. Defendant's first enumeration of error challenges the sufficiency of the evidence to authorize his convictions. The argument presented in support of this enumeration of error is directed primarily to the offenses involving just two of the victims.

The State's evidence in regard to four of the victims included ex-

pert testimony that the deoxyribonucleic acid ("DNA") of semen samples taken from the victims matched the genetic profile of DNA in a known sample of defendant's blood. An expert testified that the probability of selecting an unrelated individual from the caucasian population who had a genetic profile matching the semen taken from victim M. H. was one of 7,000 or one of 14,000, depending on which of two databases was used. Defendant relies on the fact that such a statistic means he is one of approximately 20,000 individuals in the country whose DNA would match the genetic profile of the semen sample taken from M. H. However, while the State is required to prove defendant's guilt beyond a reasonable doubt, it is not required to establish that fact to a mathematical certainty. *Vance v. State*, 262 Ga. 236, 237 (2), 238, fn. 4 (416 SE2d 516). First, we note that the approximation of the number of caucasian individuals with the same genetic profile includes females and individuals of all ages. Secondly, defendant's conviction is not predicated entirely upon the DNA evidence as there is additional circumstantial evidence of his guilt including that showing similar crimes committed by defendant.

In connection with the offenses against victim M. H., defendant relies upon testimony from a physician that at that time defendant's right arm and hand were immobilized in a splint as a result of surgery, and the absence of any testimony from M. H. regarding her attacker's arm being handicapped. However, the physician also explained that the splint was held in place by an elastic bandage. Thus, defendant could have removed the splint himself.

Defendant also questions whether the State's evidence identifying him as the perpetrator of the crimes against victim T. W. is sufficient. This victim identified defendant from a combination of a photo line-up and from an audiotape of an interview of defendant by police. The absence of DNA evidence as to this victim does not preclude defendant's conviction for the offenses against this victim. The jury was presented with sufficient identification evidence through the testimony of the victim. *Lowe v. State*, 185 Ga. App. 606, 607 (2) (365 SE2d 479). Any issues arising from defendant's attempt to impeach this victim were also for resolution by the jury.

As to each of the remaining offenses, defendant was identified as the perpetrator by DNA evidence or visual identification by the victim. A careful review of the entire record in this case reveals that there was ample evidence from which a rational trier of fact could determine the guilt of defendant beyond a reasonable doubt of all of the offenses of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Battles v. State*, 205 Ga. App. 510, 512 (422 SE2d 672).

2. Defendant enumerates as error the denial of his motion for severance. The defendant's motion sought separate trials as to the

charge or charges involving each alleged victim.

"Where criminal offenses are joined solely on the ground that they are of the same or similar character, the defendant has a right to have the offenses severed. *Dingler v. State*, 233 Ga. 462 (211 SE2d 752). However, where the offenses are so similar that they show a common scheme or plan or have an identical modus operandi, severance is discretionary with the trial court." *Mack v. State*, 163 Ga. App. 778 (1) (296 SE2d 115).

The charges against defendant clearly show a recurring pattern of conduct suggesting a common scheme or modus operandi. Each incident involved the early morning entry or attempted entry of a ground level apartment occupied by a lone female. In each of the incidents that defendant entered the apartment, he entered through a window or sliding glass door and left by the front door, sexually assaulted the victim, and told the victim that he would not be there long and that it would not take long. In most of the incidents defendant had trouble obtaining an erection and masturbated in order to achieve one, used a bandanna or handkerchief to conceal his identity, and possessed a knife. The criminal attempt charge involved a failed attempt to gain entrance, after which defendant was apprehended. Defendant was identified as the perpetrator of all of the offenses by either DNA evidence or the testimony of the victims. The trial court did not abuse its discretion in denying defendant's motion for severance. *Exley v. State*, 198 Ga. App. 748, 750 (4) (402 SE2d 798); *Seidel v. State*, 197 Ga. App. 14, 15 (3) (397 SE2d 480); *Phillips v. State*, 160 Ga. App. 345 (1), 346 (287 SE2d 69).

3. The next enumeration of error complains of the trial court's refusal to strike juror Holt for cause. " ' "In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. (Cit.)" (Cit.)' *Chancey v. State*, 256 Ga. 415, 425 (349 SE2d 717). ' "The fact that a potential juror may have some doubt as to his impartiality, or complete freedom from all bias, does not demand, as a matter of law that the juror be excused for cause. (Cits.)" (Cit.)' *Scott v. State*, 193 Ga. App. 577, 578 (2) (388 SE2d 416). 'While a venireman may initially express doubt as to his or her ability to be impartial, this fact alone does not demand that the prospective juror be excused for cause. When the venireman indicates that he can render a fair and impartial verdict based solely upon the evidence presented at trial, he is prima facie competent to serve. (Cit.) The trial court has the discretion as to whether to strike a juror for cause. (Cits.) We find no abuse of the trial court's discretion. The court followed the provisions of OCGA § 15-12-164 for setting aside a juror for cause and found that the juror(s) in question could render a fair and impartial verdict.' *Lattany*

*v. State*, 193 Ga. App. 438 (388 SE2d 23). Accord *Ward v. State*, 193 Ga. App. 137, 140 (8) (387 SE2d 150). We find no abuse of discretion here." *Nobles v. State*, 201 Ga. App. 483, 487 (7) (411 SE2d 294).

4. At a pre-trial hearing on defendant's motion in limine seeking to exclude DNA identification evidence, the State moved for the rule of sequestration. Defense counsel responded that the rule was inapplicable since he had only one witness, a DNA expert, whom he desired to use both to assist him in the cross-examination of the State's expert and as the defendant's expert witness. Nonetheless, after some colloquy the trial court ruled that if the defense expert was used to assist defense counsel in cross-examination, he would not be permitted to testify. Thus, defense counsel was compelled to choose whether to use the defense expert to assist in cross-examination or as a witness but not permitted to use him for both purposes. In his fourth enumeration of error, defendant contends that the trial court erred in thereby limiting his use of his expert witness.

Our sequestration statute, OCGA § 24-9-61, requires only that witnesses of the *other party* be examined out of the hearing of *each other*. Therefore, no violation of the statute occurs where a witness hears the testimony of the witnesses of the opposing party. *Justice v. Kern & Co.*, 197 Ga. App. 272 (2), 273 (398 SE2d 223). It follows that the trial court's ruling was not required by OCGA § 24-9-61.

Nonetheless, any resulting error was harmless. The only issue concerning DNA identification raised on appeal concerns the State's expert's assumption that the database used in her calculations was in Hardy-Weinberg equilibrium. Defendant's expert opined that this assumption was erroneous, due to the problem of population substructuring. See *Caldwell v. State*, 260 Ga. 278, 288 (1) (e) (393 SE2d 436). Since the State's expert, who testified at the pre-trial hearing, did not present testimony supporting the reasonableness of the assumption of Hardy-Weinberg equilibrium, it appears that defense counsel was not prevented from developing the evidence on any contested issue. In this connection, we should note that the State's evidence as to some aspects of the reliability of DNA identification consisted of certain written exhibits. See *Harper v. State*, 249 Ga. 519, 525 (292 SE2d 389). At trial the State bolstered its evidence on several issues, including whether there was Hardy-Weinberg equilibrium and substructuring, by introducing the testimony of additional expert witnesses and defendant has raised no issues concerning the admission of this evidence at trial or application of the rule of sequestration at trial. *Gregg v. State*, 201 Ga. App. 238, 239 (3) (a), 240 (411 SE2d 65).

Defendant also enumerates as error the admission of the State's DNA identification evidence predicated on the assumption of Hardy-Weinberg equilibrium in the population of the database. In *Caldwell v. State*, 260 Ga. 278, 288 (1) (e), supra, the State failed to establish

that the population in the database used was in Hardy-Weinberg equilibrium. In the case sub judice, evidence was presented that new developments have dispelled concern that substructuring actually exists and rendered the assumption of Hardy-Weinberg equilibrium a scientifically verifiable conclusion. The superior court was authorized on the basis of the evidence of record to conclude that the DNA identification process including the assumption of Hardy-Weinberg equilibrium had reached a state of verifiable scientific certainty. Consequently, there was no error in the admission of the DNA identification evidence in this case.

5. While defendant enumerates as error the admission of evidence concerning two victims' pre-trial identifications of him by voice recognition, no issue in this regard to admission of this evidence was raised at trial. This issue may not be presented for the first time on appeal. *Melton v. State,* 253 Ga. 178, 179 (2) (317 SE2d 839).

6. Finally, defendant contends that the trial court erred in denying his motion for new trial based on newly-discovered evidence. The standard for granting a new trial on the basis of newly-discovered evidence is well established. " 'It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' *Emmett v. State,* 232 Ga. 110, 117 (205 SE2d 231) (1974); *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357) (1971); *Burge v. State,* 133 Ga. 431, 432 (66 SE 243) (1909); *Berry v. State,* 10 Ga. 511, 527 (1851); see Code Ann. § 70-204. All six requirements must be complied with to secure a new trial. *Offutt v. State,* 238 Ga. 454, 455 (233 SE2d 191) (1977); *Corn v. State,* 142 Ga. App. 798, 799 (237 SE2d 203) (1977)." *Timberlake v. State,* 246 Ga. 488, 490 (1), 491 (271 SE2d 792).

The evidence upon which defendant relies shows a physical resemblance between himself and a subject who had been observed repeatedly attempting to enter ground floor apartment windows before being apprehended. Other than the newly-found subject's method of attempting entry to the apartments, there is nothing to connect him with the crimes of which defendant was convicted. The evidence presented by defendant in support of his motion was not so material that it would probably produce a different verdict. Therefore, the trial court did not err in denying defendant's motion for new trial based on newly-discovered evidence. *Japhet v. State,* 176 Ga. App. 189 (1), 190 (335 SE2d 425).

*Judgment affirmed. Cooper, J., concurs. Blackburn, J., concurs specially.*

BLACKBURN, Judge, concurring specially.

Although concurring with the majority opinion, I wish to emphasize the trial court's error in ruling that if the defense expert witness assisted defense counsel during cross-examination of the State's witnesses, that expert would not be permitted to testify. As explained by the majority opinion, OCGA § 24-9-61 generally requires examination of a party's own witnesses out of the hearing of each other, upon invocation of the rule by the other party; it does not prohibit one party's witness hearing the testimony of the other party's witnesses. See *Stevens v. State*, 247 Ga. 698, 702 (6) (278 SE2d 398) (1981); *Hayes v. State*, 182 Ga. App. 26, 28 (2) (354 SE2d 655) (1987). That statute provided no basis for the trial court's limitation on the defendant's use of his sole witness, who happened to be an expert on DNA evidence.

The purpose of the sequestration statute "is to prevent a witness who has not testified, or who has not completed his or her testimony, from overhearing and having his or her testimony affected by the testimony of another witness." *Lackey v. State*, 246 Ga. 331, 334 (5) (271 SE2d 478) (1980). Certainly, the purpose of the statute was not served by forcing upon the defendant the choice of giving up the testimony of his one and only witness, if that witness assisted him as a DNA expert during the trial.

Where the sequestration rule has been properly invoked, it is within the discretion of the trial court to permit a witness to remain in the courtroom to assist either party. *Dye v. State*, 220 Ga. 113 (2) (137 SE2d 465) (1964); *Justice v. State*, 213 Ga. 166 (97 SE2d 569) (1957). "The trial judge should exercise his discretion so that 'the fair rights of the opposite party are secured or the impairment of the efficiency of the court avoided. . . .' [Cits.]" *Parham v. State*, 135 Ga. App. 315, 321 (217 SE2d 493) (1975).

In the instant case, the State relied heavily upon DNA evidence in proving the charges against the defendant. Familiarity with the use of DNA evidence has not yet become common knowledge in the courtroom, and even the Supreme Court has noted the beneficial assistance of an expert witness in defending against such evidence. See *Caldwell v. State*, 260 Ga. 278, 290 (1) (f) (393 SE2d 436) (1990). Allowing the defense expert witness to assist during cross-examination and also testify would not have deprived the State of its "fair rights," as it had the benefit of several DNA experts, and would not have impaired the efficiency of the court. In fact, by enabling defense counsel to engage in a more informed cross-examination, it might even have increased the efficiency of the proceeding. Accordingly, even if OCGA

§ 24-9-61 were applicable when a party has only one witness, the trial court's limitation on the defendant's use of the DNA expert witness in this case constituted an abuse of discretion.

In contending that OCGA § 24-9-61 authorizes sequestration of a solitary defense expert witness to prevent the expert's hearing the testimony of the other witnesses, the State misplaces its reliance upon *Bartell v. State*, 181 Ga. App. 148 (1) (351 SE2d 495) (1986). With regard to the question of whether the statute even applies to such a situation, *Bartell* is silent as to whether the other witnesses were the State's witnesses, defense witnesses, or both. However, assuming the applicability of the rule to a solitary witness, the sequestration of the expert witness in *Bartell* resulted from the trial court's concern that to do otherwise would give the defense an unfair advantage, and such a concern was not present in the instant case. Further, the need for and use of the witness as an accident reconstruction expert differed greatly from the need for and use of a DNA expert witness here.

Nevertheless, despite the trial court's erroneous limitation on the use of the defense expert witness, it appears that the defense counsel was able to develop fully the evidence contesting the validity of the DNA evidence. For that reason, as concluded by the majority opinion, the trial court's error was harmless under the particular circumstances presented in this case.

DECIDED FEBRUARY 24, 1993.

*Richard E. Hicks*, for appellant.

*Thomas J. Charron, District Attorney, Jack E. Mallard, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.