## A00A0682. MALLARD v. THE STATE.
(531 SE2d 196)

ELDRIDGE, Judge.

A Taylor County jury found Alvin Mallard guilty of burglary committed with the intent to commit a theft; a second, separate burglary committed with the intent to commit a rape; aggravated assault; and rape. On appeal, Mallard raises two claims of error that, upon review, we find to be without merit. Accordingly, we affirm

Mallard's convictions.

1. Mallard first challenges the sufficiency of the evidence regarding his conviction for burglary with intent to commit a theft.

Here, the victim of the burglary with intent to commit a theft is the daughter of the 80-year-old victim of the other, previously committed burglary with intent to commit a rape (for which offense Mallard was also convicted but does not challenge herein). The evidence shows that during the earlier burglary, aggravated assault, and rape of the mother, Mallard asked the mother where her daughter was. The next day, entry was made into the daughter's apartment in the same fashion as the entry into the mother's apartment, i.e., through the window over the kitchen sink. The back screen doors in both the mother's and the daughter's apartments were cut in the same place, i.e., near the latch, as if someone had attempted to open the inside latch from outside the screen. Further, although nothing was taken, the daughter had money hidden in a closet, and it appeared to the daughter that items in her home might have been "rearranged." Pursuant to investigation, officers removed the glass from the broken kitchen window in the daughter's apartment and had it tested for fingerprints; Mallard's prints were found on the outside *and* the inside of the glass. When questioned about the burglary of the daughter's home, Mallard claimed that on June 18, 1997 — at approximately 9:00 p.m. — he may have been near the daughter's apartment and may have touched the broken window. However, the glass with Mallard's prints had been removed by the police at noon on June 18, 1997. The daughter testified that Mallard did not have permission to enter her apartment.

On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and Mallard no longer enjoys a presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

> [M]oreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, [supra]. . . . As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Turner v. State*, 223 Ga. App. 448, 449 (1) (a) (477 SE2d 847) (1996). With regard to the offense of burglary,

> [w]hether appellant entered the [daughter's apartment]

with intent to commit theft was a matter for the factfinder to decide based on the facts and circumstances proven at trial. The presence of valuables inside the premises can support an inference of intent to steal, particularly when no other motive is apparent.

(Citations omitted.) *Harris v. State*, 222 Ga. App. 56, 58 (473 SE2d 229) (1996). See also *Knight v. State*, 237 Ga. App. 669, 670 (516 SE2d 532) (1999); *Vinson v. State*, 190 Ga. App. 676 (1) (379 SE2d 792) (1989); *Carroll v. State*, 185 Ga. App. 857, 859 (2) (366 SE2d 232) (1988).

In this case, Mallard's prints were on the outside and the *inside* of the victim's kitchen window pane. This evidence supports the inference that Mallard " 'broke the plane of the structure' " and demonstrates an "entry." *Mullinnix v. State*, 177 Ga. App. 168, 169 (338 SE2d 752) (1985); *Hayes v. State*, 193 Ga. App. 33, 35 (4) (387 SE2d 139) (1989). Further, Mallard's point of entry in the earlier, completed, uncontested burglary of the mother's home was consistent with the point of entry into the daughter's home; the evidence showed that the residence contained items of value, including money hidden in a closet; the daughter's home appeared "rearranged"; and when confronted about the burglary of the daughter's home, Mallard fabricated a story about his touching a broken window pane that had, in fact, been removed some nine hours earlier. Accordingly, the evidence was sufficient for a rational trier of fact to have found Mallard guilty beyond a reasonable doubt of burglary with intent to commit a theft. *Jackson v. Virginia*, supra; *Mullinnix v. State*, supra; *Turner v. State*, 151 Ga. App. 169, 170 (259 SE2d 171) (1979).

2. Mallard also contends that his trial counsel was constitutionally deficient for failing to request and receive expert assistance with the State's DNA evidence, failing to move to independently test the DNA evidence, and failing to object to the admissibility of the DNA evidence.

The proper standard to be employed in determining enumerations concerning ineffective assistance of counsel, whether based upon a claim of right arising under federal or state law, is the two-pronged test announced in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). First, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be

considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different.

(Citations and punctuation omitted.) *Gomillion v. State*, 236 Ga. App. 14, 16 (3) (512 SE2d 640) (1999).

In this case, the 80-year-old victim of the earlier burglary, aggravated assault, and rape could not see. Both prior to and during trial, she did not identify Mallard as the perpetrator of the offenses against her. The State's primary evidence of identity consisted of (1) Mallard's admission that he was near the victim's apartment at the time the victim was raped, and (2) the clothes Mallard admitted he was wearing during the same time period that the victim was raped. The clothes had bloodstains on them, and DNA testing at the Georgia Bureau of Investigation Crime Laboratory ("GBI Crime Lab") showed the blood on Mallard's clothes matched the victim's blood.[1]

At the motion for new trial hearing, Mallard's trial attorney testified that he immediately recognized the importance of the DNA evidence and, thus, pursuant to motions filed, he obtained funds for expert assistance in preparing to challenge the DNA evidence at trial. In that regard, defense counsel employed Cellmark Diagnostics to review the State's DNA evidence, and he relied upon their expertise to determine if further testing and analysis would prove helpful to the defense:

[Defense counsel:] On October 28th, I talked with a Ms. Cotton with Cellmark. . . . The thing I thought might be really helpful is something they called band shifting, where a lot of times a match is not a match, but it's close enough that they will nonetheless call it a match. I thought that would be very helpful to me. She warned me adamantly to stay away from that. She told me that Ms. Retzer [(GBI Crime Lab expert)] would kill me on that. She told me; the two things she told me to bring out was I believe, that the GBI files indicate that at one time they actually had the known sample and the evidence sample. Apparently, they were testing them at the same time, and it is not a good scientific procedure to do

---

[1] The expert testified that the DNA from the blood on Mallard's clothes matched the DNA from a blood sample taken from the victim; the matching DNA patterns found in the tested blood samples could occur in no more than one in ten billion people, making the odds ten billion to one that it was the victim's blood on Mallard's clothes.

that. And the other time, I think she said there was a control or something in the testing that had failed. She said, you know, try to bring that out with her, but don't go too far because if you check the records closely enough, they [(the GBI Crime Lab)] actually did the test again. And so it was probably accurate. And they told me that was about the best they could do to help me.

[Question:] And after your conversation with them in October, you made the decision not to have them independently test the DNA evidence?

[Defense counsel:] Right, because they told me they didn't think their results would be any different.

Defense counsel also had discussions with the State's experts at the GBI Crime Lab, as well as additional discussions with his experts at Cellmark Diagnostics. The upshot of those discussions was that,

they said the Crime Lab in Georgia did a good job, the GBI's Crime Lab. And they did follow; I mean they did use the right procedures and so forth, regulations and procedures. . . . I didn't feel there was any help they [(Cellmark)] could give me by testifying and I also asked if they had independently tested this, if they thought there would be any difference. And they said they didn't think there would be any difference.

Defense counsel determined that additional testing by Cellmark might, in fact, bolster the State's case by supplying a second, independent source for the same damaging evidence.

Based on this evidence, we find that Mallard has failed to demonstrate either prong of the *Strickland* standard. Defense counsel did, in fact, hire experts to analyze the State's DNA evidence. Further, we do not find error in defense counsel's strategic decisions based on advice from his experts, and Mallard has not shown such decisions were error. Mallard has also failed to show that independent testing of the State's evidence would have produced different results or that the State's DNA evidence was inadmissible.[2] See

---

[2] Mallard misstates the law when claiming that "[i]t is a requirement that the laboratory show that its data bases are in Hardy-Weinberg equilibrium in order to base its assumption on the statistical likelihood of a statistical match." In fact, "new developments have dispelled concern that substructuring actually exists and rendered the assumption of Hardy-Weinberg equilibrium a scientifically verifiable conclusion." *Greenway v. State*, 207 Ga. App. 511, 514-515 (428 SE2d 415) (1993). Thus, the Hardy-Weinberg equilibrium may be assumed. Id. Mallard also misstates the law in claiming that "only actual observed genotype frequencies [as opposed to expected frequency calculations] are admissible in Georgia." No case stands for such proposition. Expected frequencies are often used in DNA statistical

*Whitner v. State*, 202 Ga. App. 608, 609 (415 SE2d 52) (1992). Accordingly, Mallard's ineffective assistance of counsel claim fails.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MARCH 14, 2000.

*William J. Mason*, for appellant.

*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.

---

analysis and are the purpose for the Hardy-Weinberg formula. See *Redding v. State*, 219 Ga. App. 182, 185 (464 SE2d 824) (1995). In fact, the State's expert testified that she followed the procedures and protocols established by the GBI Crime Lab and that such procedures and protocols are generally accepted in the scientific community as being reliable and valid and are widely used in the field of DNA analysis. See *Johnson v. State*, 265 Ga. 668 (461 SE2d 209) (1995).